# EXHIBIT A

# ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "Agreement") is entered into as of May 18, 2010, by and between HPC3 Furniture Holdings, LLC, a Delaware limited liability company ("Buyer"), on the one hand, and Barcalounger Corporation, a Delaware corporation ("Barcalounger"), and American of Martinsville, Inc., a Delaware corporation ("AOM"; collectively with Barcalounger, "Sellers" and each, a "Seller"), on the other hand.

## Recitals

WHEREAS, Sellers desire to sell and Buyer desires to buy substantially all of the business related assets of Sellers as hereinafter described; and

WHEREAS, It is anticipated by this Agreement that the Sellers will each commence a case (the "Bankruptcy Case") by filing voluntary petitions for relief pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

NOW, THEREFORE, in consideration of the mutual promises, covenants and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by all parties, the parties have agreed as follows:

## Agreement

## ARTICLE I

## PURCHASE AND SALE OF ASSETS

1.1  Definitions. For purposes of this Agreement, the following terms shall have the following respective meanings:

"Agreement" has the meaning set forth in the opening paragraph of this document.

"Assets" shall mean, collectively, all of the assets of the Seller, including, without limitation, pre-petition claims and causes of action (including, but not limited to, claims arising under federal anti-dumping laws) inventory, equipment, Assumed Contracts and Leases, trade secrets and other Intellectual Property and other assets used in the Business, but shall not include the Excluded Assets.

"Assumed Contracts and Leases" means the executory contracts and unexpired leases set forth in Schedule 1.1(a) hereto as the same may be modified through closing; provided however that any cure cost and adequate assurance of future performance requirements shall be solely the obligation of the Buyer and shall not be credited against the Purchase Price.

"Auction" means an auction for the Assets of the Sellers to be conducted in accordance with the Solicitation, Bid and Auction Procedures (defined below).

"Bankruptcy Case" has the meaning set forth in the recitals of this Agreement.

"Bankruptcy Code" has the meaning set forth in the recitals of this Agreement.

"Bankruptcy Court" has the meaning set forth in the recitals of this Agreement.

"Business" shall mean the business of furniture manufacture as currently engaged in by the Sellers.

"Business Day" shall mean a date on which major banks are open for business in the City of Los Angeles, California.

"Buyer" has the meaning set forth in the opening paragraph of this Agreement.

"Closing" shall mean the closing of the transactions between Buyer and Sellers contemplated herein.

"Closing Date" shall mean the date on which the Closing occurs.

"Costco Transaction" shall mean that transaction contemplated between Sellers and Costco Wholesale Corporation pertaining to the Catalina Order.

"Escrow Agreement" shall mean that certain Escrow Agreement between Buyer, Sellers, and "Escrow Agent" (as designated in the Escrow Agreement) dated as of May 19, 2010.

"Excluded Assets" shall mean (i) those assets designated on Schedule 1.1(b) hereto or hereafter designated by Buyer as excluded prior to or at Closing; (ii) all executory contracts or unexpired leases not designated on Schedule 1.1(a) hereto or hereafter designated by Buyer as excluded prior to or at Closing; and (iii) Receivables.

"Intellectual Property" shall mean all intellectual property owned by either Seller, including, without limitation, trade names, trade secrets and trademarks, which are useful in operating the Business, including, without limitation, those set forth on Schedule 1.1(c) hereto.

"Receivables" shall mean accounts receivable from customers of either Seller or otherwise arising in the ordinary course of the Business.

"Sale Order" shall mean an order of the Bankruptcy Court approving the transactions contemplated in this Agreement.

"Seller" and "Sellers" have the meanings set forth in the opening paragraph of this Agreement.

"Solicitation, Bid and Auction Procedures" means those certain procedure as established by the Bankruptcy Court for the establishment and conduct of the Auction.

"Unsecured Lender" means Hancock Park Capital III, L.P.

"Unsecured Lender Claims" means the pre-petition claims in the amount of $33,055,285 of the Unsecured Lender for amounts borrowed by Debtors from the Unsecured Lender.

1.2  Purchase; Purchase Price and Earnest Money.

(a)  Purchase. Subject to final approval of this transaction by the Bankruptcy Court and upon the terms and subject to the conditions contained in this Agreement, Sellers shall sell, assign, and deliver to Buyer, free and clear of all claims, interests, liens and encumbrances and Buyer shall purchase and accept, all respective right, title and interest of the Sellers in and to the Assets.

(b)  Purchase Price. Upon the terms and subject to the conditions set forth in this Agreement, Buyer shall pay to Sellers the aggregate amount (the "Purchase Price") of One Million Five Hundred Thousand Dollars ($1,500,000) in cash by wire transfer in immediately available funds, to be apportioned in the Seller's sole discretion.

(c)  Earnest Money. Buyer is delivering to the Escrow Agent, a deposit in the amount of $150,000. The Escrow Agent shall hold said deposit in an interest-bearing escrow account pursuant to the terms of the Escrow Agreement. Such deposit shall be non-refundable in all events, excepting only if the transaction with Buyer does not close due to (i) Seller accepting the bid of a rival bidder at a time when Buyer is not in breach of this Agreement, (ii) Seller materially breaching its obligations hereunder; or (iii) Buyer terminating this Agreement pursuant to Section 7.1(a) hereof.

1.3  No Assumption of Any Liabilities. It is understood and agreed that Buyer shall not assume or become liable directly, indirectly, contingently or otherwise for the payment of any debts, liabilities, losses, accounts payable, bank indebtedness, mortgages, or other obligations of Seller of any nature whatsoever, whether related to the Assets or otherwise and such other liabilities, whether the same are known or unknown, now existing or hereafter arising, of whatever nature or character, whether absolute or contingent, liquidated or disputed. Buyer shall not have any successor liability related to Seller or the Assets to the maximum extent permitted by law.

1.4  Closing. Subject to the satisfaction or waiver of the conditions set forth herein, the consummation of the purchase and sale of the Assets which has been approved by the Bankruptcy Court shall take place within five Business Days following the satisfaction or waiver of all other conditions to Closing set forth in Article VI, at the offices of counsel to the Sellers (or on such other date at such other time and place as the parties shall agree in writing).

## ARTICLE II

## REPRESENTATIONS AND WARRANTIES OF SELLERS

Each Seller hereby represents and warrants to Buyer as follows with respect to such Seller:

2.1 <u>Organization, Standing and Power</u>. Each Seller is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware and has the requisite corporate power and authority to carry on its business as now being conducted and to effect the transactions contemplated hereunder.

2.2 <u>Authority</u>. Except for approval of the Bankruptcy Court, Seller has all requisite power and authority to enter into this Agreement and to consummate the transactions contemplated hereby. The execution and delivery of this Agreement by Seller and the consummation by Seller of the transactions contemplated hereby have been duly and validly authorized by all necessary action on the part of Seller. This Agreement has been duly and validly executed and delivered by Seller and (assuming the valid authorization, execution and delivery of this Agreement by Buyer) constitutes the legal, valid and binding obligation of Seller and is enforceable against Seller in accordance with its terms.

2.3 <u>Brokers</u>. No broker, investment banker or other person engaged by Seller is entitled to any broker's, finder's, or other similar fee or commission in connection with the transactions contemplated by this Agreement.

2.4 <u>No Conflict</u>. The consummation of the transactions contemplated by this Agreement and compliance with the provisions hereof will not (i) conflict with or result in a breach of the terms, conditions or provisions of any order of any court or other agency of government, or the charter or bylaws of Seller, or (ii) result in the creation or imposition of any lien, charge or encumbrance of any kind whatsoever on any of its Assets.

2.5 <u>Title.</u> Seller holds title to all of its Assets and has not received any claims of infringement against Seller related to the Intellectual Property.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Sellers as follows:

3.1 <u>Organization, Standing and Power</u>. Buyer is a limited liability company duly organized, validly existing, and in good standing under the laws of the State of Delaware and has the requisite power and authority to carry on its business as now being conducted and to effect the transactions contemplated hereunder.

3.2 <u>Authority</u>. Buyer has all requisite power and authority to enter into this

Agreement and to consummate the transactions contemplated hereby. The execution and delivery of this Agreement by Buyer and the consummation by Buyer of the transactions contemplated hereby have been duly and validly authorized by all necessary action on the part of Buyer. This Agreement has been duly and validly executed and delivered by Buyer and (assuming the valid authorization, execution and delivery of this Agreement by Seller) constitutes the legal, valid and binding obligation of Buyer and is enforceable against Buyer in accordance with its terms.

3.3     Consents and Approvals; No Violation. The execution and delivery of this Agreement by Buyer do not, and the consummation of the transactions contemplated hereby and compliance with the provisions hereof will not, result in any violation of, or default (with or without notice or lapse of time, or both) under, or give to others a right of termination, cancellation or acceleration of any obligation or the loss of a material benefit under, or result in the creation of any lien, security interest, charge or encumbrance upon any of the properties or assets of Buyer or any of its subsidiaries under, any provision of (i) the charter or organizational document or bylaws of Buyer, (ii) any provision of the comparable charter or organizational documents of any of Buyer's subsidiaries, (iii) any loan or credit agreement, note, bond, mortgage, indenture, lease or other agreement, instrument, permit, concession, franchise or license applicable to Buyer or any of its subsidiaries or (iv) any judgment, order, decree, statute, law, ordinance, rule or regulation applicable to Buyer or any of its subsidiaries or any of their respective properties or assets, other than, in the case of clauses (ii), (iii) or (iv), any such violations, defaults, rights, liens, security interests, charges or encumbrances that, individually or in the aggregate, would not prevent the consummation of any of the transactions contemplated hereby in accordance with the terms of this Agreement. No filing or registration with, or authorization, consent or approval of, any governmental entity is required by or with respect to Buyer or any of its subsidiaries in connection with the execution and delivery of this Agreement by Buyer or is necessary for the consummation of the transactions contemplated by this Agreement.

3.4     Brokers. No broker, investment banker, or other person engaged by Buyer is entitled to any broker's, finder's, or other similar fee or commission payable by the Seller in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of Buyer.

## ARTICLE IV

## COVENANTS OF SELLER

4.1     Pre-Closing Covenants of Sellers. Each Seller covenants for itself to Buyer that pending completion of the sale of Assets contemplated hereby and as of the Closing Date:

(a)     Each of its representations and warranties set forth in Article II hereof shall be true and correct in all material respects.

(b)     Seller will maintain itself at all times up to and including the Closing Date as a duly licensed corporation in good standing under the laws of its state of incorporation.

(c) Seller will not mortgage, pledge or allow any lien to be placed upon any of the Assets, except those in existence on the date hereof and those authorized upon order of the Bankruptcy Court with due advance notice to Buyer. Any sale to Buyer shall be free and clear of any and all such liens.

(d) Seller will seek to obtain entry of an order approving Solicitation Bid and Auction procedures in a form reasonably acceptable to Buyer in the exercise of its reasonable discretion.

(e) Seller will operate the Business in a manner reasonably consistent with the immediate pre-petition practices in place and will not sell any material Assets to be conveyed hereunder; provided however, that Seller may sell finished goods in the ordinary course of business and such sale(s) shall not operate as a credit against or cause a reduction in the Purchase Price.

## ARTICLE V

## COVENANTS OF BUYER AND SELLER

5.1 <u>Approvals of Third Parties; Reasonable Best Efforts</u>.

(a) Upon the terms and subject to the conditions set forth in this Agreement, each of the parties agrees to use reasonable best efforts to take, or cause to be taken, all actions, and to do, or cause to be done, and to assist and cooperate with the other parties in doing, all things necessary, proper or advisable to consummate and make effective, in the most expeditious manner practicable, the transactions contemplated by this Agreement, including, without limitation: (i) the obtaining of all necessary actions or non-actions, waivers, consents, approvals, authorizations and exemptions from all governmental entities and the making of all necessary registrations and filings (including filings with governmental entities) and the taking of all reasonable steps as may be necessary to obtain an approval or waiver from, or to avoid an action or proceeding by, any governmental entity; (ii) the obtaining of all necessary consents, approvals or waivers from third parties, including Seller's lenders; (iii) the defending of any lawsuits or other legal proceedings, whether judicial or administrative, challenging this Agreement or the consummation of the transactions contemplated hereby, including seeking to have any stay or temporary restraining order entered by any court or other governmental entity vacated or reversed; and (iv) the execution and delivery of any additional instruments necessary to consummate the transactions contemplated by this Agreement. No party to this Agreement shall consent to any voluntary delay of the consummation of the transactions contemplated by this Agreement at the behest of any governmental entity without the consent of the other parties to this Agreement, which consent shall not be unreasonably withheld.

(b) Each Seller will use its reasonable best efforts to cause or obtain the satisfaction of the conditions applicable to such Seller specified in Sections 6.1 and 6.3 below. Buyer will use its reasonable best efforts to cause or obtain the satisfaction of the conditions applicable to Buyer specified in Sections 6.1 and 6.2 below.

5.2 Fees and Expenses. All costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby including, without limitation, the fees and disbursements of counsel, financial advisors and accountants, shall be paid by the party incurring such costs and expenses.

5.3 Waiver of Claims. Immediately following the Closing, Buyer shall cause Unsecured Lender, and Unsecured Lender shall be deemed pursuant to the Sale Order, to have waived and relinquished all of its Unsecured Lender Claims against Sellers. Unsecured Lender shall not sell or otherwise transfer ownership or control of the Unsecured Lender Claims.

## ARTICLE VI

## CONDITIONS TO THE OBLIGATIONS OF THE PARTIES

6.1 Conditions to Each Party's Obligations. The respective obligations of each party to effect the transactions contemplated by this Agreement shall be subject to the fulfillment on or prior to the Closing Date of the following conditions:

(a) No Order Preventing Transactions. No court or other governmental entity having jurisdiction over Sellers or Buyer, or any of their respective subsidiaries, shall have enacted, issued, promulgated, enforced or entered any law, rule, regulation, executive order, decree, injunction or other order (whether temporary, preliminary or permanent) which is then in effect and has the effect of making the transactions contemplated by this Agreement illegal.

(b) Bankruptcy Court Approval. The Bankruptcy Court shall have entered the Sale Order, which Sale Order shall not have been reversed or subject to any stay. The Sale Order shall be in form and substance acceptable to Buyer in its reasonable discretion.

6.2 Conditions to Obligation of Sellers. The obligation of Sellers to effect the transactions contemplated by this Agreement shall be subject to the fulfillment on or prior to the Closing Date of the condition that Buyer shall have performed in all material respects each of its covenants and agreements contained in this Agreement required to be performed on or prior to the Closing Date, including payment of the Purchase Price, and each of the representations and warranties of Buyer contained in this Agreement shall be true and correct in all material respects on and as of the Closing Date as if made on and as of such date.

6.3 Conditions to Obligations of Buyer. The obligations of Buyer to effect the transactions contemplated by this Agreement shall be subject to the fulfillment on or prior to the Closing Date of the following additional conditions:

(a) Performance of Obligations; Representations and Warranties. Seller shall have performed in all material respects each of its covenants and agreements contained in this Agreement required to be performed on or prior to the Closing Date, and each of the representations and warranties of Sellers contained in this Agreement shall be true and correct in all material respects on and as of the Closing Date as if made on and as of such date.

(b) <u>Transfer and Assumption Documents</u>. Sellers shall convey title to Buyer by executing documents in form and substance reasonably acceptable to Buyer.

(c) <u>Other Closing Documents</u>. Sellers shall deliver lien releases from the liens on the Assets and such other documents as Buyer may reasonably request at Closing.

## ARTICLE VII

## TERMINATION, AMENDMENT, AND WAIVER

7.1 <u>Termination</u>. This Agreement may be terminated in writing at any time prior to the Closing Date:

(a) By Buyer, (i) if the Closing does not occur within fifteen (15) days after the date of entry of a final and nonappealable Sale Order and such failure is not due to a breach by Buyer or (ii) no Sale Order has been entered by July 9, 2010; other than due to Buyer's breach of this Agreement;

(b) By Sellers, (i) if the Closing does not occur within fifteen (15) days after the date of entry of a final and nonappealable Sale Order and such failure is not due to a breach by either Seller or (ii) no Sale Order has been entered by July 9, 2010; other than due to either Seller's breach of this Agreement; or

(c) By Buyer or Sellers if, before the Closing Date, the other party is in material breach of any representations, warranty, covenant or agreement contained herein and has not cured the same.

7.2 <u>Liability if Agreement Terminated</u>. Termination of this Agreement shall not relieve any party of any liability for breaches of this Agreement prior to the date of termination.

## ARTICLE VIII

## GENERAL PROVISIONS

8.1 <u>Survival of Representations and Warranties</u>. The representations and warranties set forth in this Agreement or in any schedule, exhibit or instrument delivered pursuant to this Agreement by Sellers shall terminate upon Closing.

8.2 <u>Expenses</u>. Each party shall pay its own expenses incident to this Agreement and the transactions hereby contemplated. In the event of any litigation between the parties arising out of this Agreement, the prevailing party shall be entitled to recover from the other party its court costs and reasonable attorneys' fees at the trial and all appellate levels.

8.3 <u>Notices</u>. Any notice, communication, request, reply or advice hereunder (a "Notice") must be in writing and shall be delivered by email with a copy by reputable overnight

commercial courier service or hand delivery. Notice so given shall be effective when delivered on a Business Day before 5 p.m. Refusal of delivery shall be deemed to be receipt. Notice given in any other manner shall be effective when received by the party to whom it is given. For purposes of Notice, the addresses of the parties shall be as follows:

If to Sellers:  Mr. John Chapman
Chief Restructuring Officer
c/o Corporate Forensics, LLC
209 NE 5th Terrace
Delray Beach, FL 33444
Phone: 561-278-7008
Fax: 561-278-7078

with copy to  David W. Wirt, Esq.
Aaron C. Smith, Esq.
Locke Lord Bissell & Liddell LLP
111 South Wacker Drive
Chicago, IL 60606
Tel: (312) 443-0700
Fax: (312) 443-0336

If to Buyer:  Mr. Michael Gooch
HPC 3 Furniture Holdings, LLC
1880 Century Park East, Ste. 900
Los Angeles, CA 90067
Tel: (310) 228-6900
Fax: (310) 228-6939

With copy to:  Patrick C. Maxcy, Esq.
Sonnenschein Nath & Rosenthal LLP
233 South Wacker Drive, Ste. 7800
Chicago, IL 60606-6404
Ph.: (312) 876-8000
Fax: (312) 876-7934

8.4 <u>Section and Other Headings</u>. Section or other headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

8.5 <u>Exhibits</u>. Each exhibit attached hereto shall be deemed to be a part of this Agreement to the same extent as if set forth verbatim in the body of this Agreement.

8.6 <u>Enforcement</u>. The laws of the State of Delware shall govern the interpretation, validity, performance and enforcement of this Agreement. If any provision of this Agreement should be held to be invalid or unenforceable, the validity and enforceability of the remaining provisions of this Agreement shall not be affected thereby. So long as the Bankruptcy Case

remains open, the parties may enforce this Agreement in the Bankruptcy Court and consent to the Bankruptcy Court's jurisdiction with respect to all such matters.

8.7     Parties; No Third Party Beneficiaries. This Agreement shall be binding upon and enforceable against, and shall inure solely to the benefit of, the parties hereto and their respective successors and assigns. Nothing herein shall confer any rights or remedies to any person or entity which is not a party hereto.

8.8     Counterparts. This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument and any of the parties hereto may execute this Agreement by signing any such counterpart.

8.9     Facsimile Signature. This Agreement may be executed and accepted by facsimile signature and any such signature shall be of the same force and effect as an original signature.

8.10    Further Assurances. Sellers will execute such further documentation or take such further actions as Buyer may reasonably request to effectuate the transfer of the Assets and implement this Agreement.

**[Signatures on following page.]**

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date set forth above.

**BUYER**

HPC3 FURNITURE HOLDINGS, LLC

By: _____
Name: _Michael Fourticq, Jr._
Title: _Manager_

**SELLERS**

BARCALOUNGER CORPORATION

By:_____
Name: Mr. John Chapman
Title: Chief Restructuring Officer

-- and --

AMERICAN OF MARTINSVILLE, INC.

By:_____
Name: Mr. John Chapman
Title: Chief Restructuring Officer

11

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date set forth above.

**BUYER**

HPC3 FURNITURE HOLDINGS, LLC

By: _____
Name: _____
Title: _____

**SELLERS**

BARCALOUNGER CORPORATION

By: */s/ John W Chapman/*
Name: Mr. John Chapman
Title: Chief Restructuring Officer

— and —

AMERICAN OF MARTINSVILLE, INC.

By: */s/ John W Chapman/*
Name: Mr. John Chapman
Title: Chief Restructuring Officer

# Schedule 1.1(a)
List of Executory Contracts and
Unexpired Leases to be Assumed

[TO BE PROVIDED PRIOR TO AUCTION]

## Schedule 1.1(b)
List of Excluded Assets

1. In the event that Costco Transaction is consummated, all such inventory contemplated and Receivables generated by the Costco Transaction.

[TO BE SUPPLEMENTED PRIOR TO AUCTION]

## Schedule 1.1(c)
List of Intellectual Property

[MAY BE SUPPLEMENTED PRIOR TO AUCTION]

Licenses, Patents, Copyrights,
Trademarks and Tradenames

1. Barcalounger Corporation owns the following trademarks registered with the United States Patent and Trademark Office:

| Trademark | Registration No. | Filing Date |
|---|---|---|
| Barcalounger | 73161431 / 1116068 | 4/3/1979 |
| Wayne Phillips Furniture | 76457248 / 2851667 | 6/8/2004 |

2. Barcalounger Corporation has entered into a Design Royalty Agreement dated July 21, 2003 with Louis A. Lara which contains a license to use the designs and name of Louis A. Lara in connection with the manufacture, sale, and distribution of products.

3. Recliner Holding Corp. – None.

(a) Listed Intellectual Property

1. Trademarks and copyrights. See attached listing. In addition, the Company uses collection names and other terms in which it may have common law trademark rights. The Company may also have the ability to copyright certain patterns or design elements.

2. Patents. See attached listing.

3. Domain names:

   a. www.americanofmartinsville.com
   b. www.americanofmartinsville.org

(b) Intellectual Property Licenses

1. Sales and Distribution Agreement, dated January 4, 1998, between American and LADD.

2. Master Agreement for Products and Services, dated November 26, 2002, by and between Unisys Corporation and LADD, as amended by a Supplemental Schedule Order dated December 29, 2005.

Trademark and Service Mark Applications/Registrations

| Country | Mark | Application No. | Registration No. | Goods / Services | Status |
|---|---|---|---|---|---|
| China | AMERICAN OF MARTINSVILLE | 9800114176 | N/A | Furniture (Class 20) | Filed 09-Oct-98 |

15

| | | and Design | | | | |
|---|---|---|---|---|---|---|
| China | | MARTINSVILLE | 9800020215 | 1282889 | Furniture, namely furniture of metal, office furniture; wall ornamentation, not of textile (furniture); decorative wall plaques, not of textile (furniture); beds, tables, dressing tables, writing desks, sofas (Class 20) | Registered 14-Jun-99 |
| El Salvador | | AMERICAN OF MARTINSVILLE | 335698 | 6 Book 111 | Furniture (Class 20) | Registered 24-Jul-00 |
| Guatemala | | AMERICAN OF MARTINSVILLE | 199804616 | 98931 | Furniture (Class 20) | Registered 22-Sep-99 |
| Japan | | AMERICAN OF MARTINSVILLE | 145952/92 | 3022759 | Furniture (Class 20) | Registered 28-Feb-95 |
| USA | | AMERICAN OF MARTINSVILLE | 73/018,498 | 1,042,916 | Bedroom, dining room and living room furniture for homes, hotels, motels and other commercial establishments (Class 20) | Registered 06-Jul-76 |
| USA | | AMERICAN OF MARTINSVILLE | 74/196,873 | 1,772,375 | Furniture (Class 20) | Registered 18-May-93 |
| USA | | AMERICAN OF MARTINSVILLE | 73/018,497 | 1,044,876 | Bedroom, dining room and living room furniture for homes, hotels, motels and other commercial establishments (Class 20) | Registered 27-Jul-76 |
| USA | | AMERICAN OF MARTINSVILLE HANDCRAFTED UPHOLSTERY | 73/396,182 | 1,269,232 | Bedroom, dining room and living room furniture for homes, hotels, motels and other commercial establishments (Class 20) | Registered 06-Mar-84 |

## Patents

| Title | Patent No. | Issue Date | Application No. |
|---|---|---|---|
| Desk | D497,742 | 11/02/2004 | 29/190,435 |
| Furniture Panel | D514,849 | 02/14/2006 | 29/190,441 |
| Desk Top | D500,220 | 12/28/2004 | 29/190,489 |
| Armoire | D499,579 | 12/14/2004 | 29/190,490 |
| Armoire | D509,681 | 09/20/2005 | 29/202,944 |
| Headboard | D507,912 | 08/02/2005 | 29/202,945 |
| Dresser | D506,326 | 06/21/2005 | 29/202,946 |
| Louvered Top Molding for Furniture | | Pending | 29/202,915 (filed 4/7/2004) |
| Lockable Furniture Article For Storage of Personal Items | 6,736,468 | 05/18/2004 | 10/330,452 |

| MARK | SERIAL NO. | FILING DATE | REGISTRATION NO. | REGISTRATION DATE |
|---|---|---|---|---|
| AOM STUDIOS | 77/399,970 | 2/19/2008 | 3,568,508 | 1/27/2009 |
| AMERICAN OF MARTINSVILLE | 77/399,966 | 2/19/2008 | 3,568,507 | 1/27/2009 |
| AMERICAN OF MARTINSVILLE | 74/196,873 | 8/22/1991 | 1,772,375 | 5/18/1993 |
| AMERICAN OF MARTINSVILLE | 73/018,497 | 4/11/1974 | 1,044,876 | 7/27/1976 |

| Registration or Application No. | Country | Registration or Filing Date | Mark |
|---|---|---|---|
| 73161431 / 1116068 | USA | 4/03/1979 | Barcalounger |
| 76457248 / 2851667 | USA | 6/08/2004 | Wayne Phillips Furniture |

| PATENT TITLE | U.S. PATENT NO. | ISSUE DATE | APP. SERIAL NO. | FILING DATE |
|---|---|---|---|---|
| LOCKABLE FURNITURE ARTICLE FOR STORAGE OF PERSONAL ITEMS | 6,736,468 | 5/18/2004 | 10/330,452 | 12/27/2002 |
| DESK | D497,742 | 11/2/2004 | 29/190,435 | 9/22/2003 |
| ARMOIRE | D499,579 | 12/14/2004 | 29/190,490 | 9/22/2003 |
| DESK TOP | D500,220 | 12/28/2004 | 29/190,489 | 9/22/2003 |
| DRESSER | D506,326 | 6/21/2005 | 29/202,946 | 4/7/2004 |
| HEADBOARD | D507,912 | 8/2/2005 | 29/202,945 | 4/7/2004 |
| ARMOIRE | D509,681 | 9/20/2005 | 29/202,944 | 4/7/2004 |
| FURNITURE PANEL | D514,849 | 2/14/2006 | 29/190,441 | 9/22/2003 |