# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Barcalounger Corporation, et al.,[1] | ) Case No. 10-11637 (BLS) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) Objection Deadline: June 14, 2010 at 4:00 p.m. |
| | ) Hearing Date: June 21, 2010 at 9:30 a.m. |
| | ) |

## APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO (I) EMPLOY AND RETAIN ACCRETIVE SOLUTIONS AS FINANCIAL ADVISOR TO THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE; (II) DESIGNATE JOHN W. CHAPMAN AS CHIEF RESTRUCTURING OFFICER TO THE DEBTORS; AND (III) WAIVE COMPLIANCE WITH CERTAIN REQUIREMENTS OF LOCAL BANKRUPTCY RULE 2016-2

Barcalounger Corporation and American of Martinsville, Inc. (the "Debtors"), as debtors and debtors in possession in the above-captioned cases, hereby file their Application for Entry of an Order Authorizing the Debtors to (i) Employ and Retain Accretive Solutions as Financial Advisor to the Debtors *Nunc Pro Tunc* to the Petition Date; (ii) Designate John W. Chapman as Chief Restructuring Officer to the Debtors; and (iii) Waive Compliance With Certain Requirements of Local Bankruptcy Rule 2016-2 (the "Application"). In support of this Application, the Debtors rely on the Declaration of Frank R. Mack, Senior Managing Director at Accretive Solutions (the "Mack Declaration"), a copy of which is attached hereto as Exhibit A, as well as the Declaration of John W. Chapman in support of the Application, a copy of which is attached hereto as Exhibit B. In further support hereof, the Debtors respectfully state:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Barcalounger Corporation (9018); and American of Martinsville, Inc. (6836). The location of the Debtors' corporate headquarters and service address is: 128 East Church Street, Martinsville, Virginia 24112.

## I.
## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Application under 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this case and this Application is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code").

## II.
## BACKGROUND

3. On May 19, 2010 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court") commencing the above-captioned chapter 11 cases. The factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in detail in the Declaration of John W. Chapman in Support of the Chapter 11 Petitions and the First Day Pleadings dated May 19, 2010 [Docket No. 3] (the "First Day Declaration").[2]

4. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. No trustee or examiner has been appointed in these chapter 11 cases. On May 28, 2010, the United States Trustee appointed an official committee of unsecured creditors (the "Committee").

---

[2] Capitalized terms used, but not defined, herein shall have the same meanings as in the First Day Declaration.

## III.
## RELIEF REQUESTED

6. By this Application, the Debtors seek to employ and retain Accretive Solutions-Detroit, Inc. ("Accretive Solutions") effective as of the Petition Date as their financial advisors in these chapter 11 cases pursuant to sections 105(a) and 363 of the Bankruptcy Code in accordance with the terms and conditions set forth in the Engagement Letter (as defined below). The Debtors further seek authority to designate John W. Chapman as Chief Restructuring Officer ("CRO") to the Debtors.

## IV.
## BASIS FOR RELIEF

7. Accretive Solutions is a national consulting firm that specializes in a wide range of business solutions within business transformation, financial accounting and reporting, governance and compliance, and information technology strategies. Its headquarters is located at 105 Maxess Road, Suite 107, Melville, New York 11747. Together with its subsidiaries, Accretive Solutions has approximately 1000 full-time employees located in offices in Atlanta, Dallas, Detroit, Houston, Irvine, Jacksonville, Los Angeles, New York City, San Antonio, San Francisco, and the Silicon Valley.

8. Accretive Solutions provides a broad range of corporate advisory services to its clients, including, without limitation, services pertaining to: (a) corporate restructurings (b) interim management; (c) mergers, acquisitions, and divestitures; (d) expert witness assignments; (e) performance improvement; (f) program & project management; (g) IT business analytics & data management; (h) IT business systems selection, implementation & optimization; (i) IT architecture, operations & infrastructure; (j) IT enterprise risk management & security; (k) creditor claims analyses and reconciliations; (l) corporate tax support; (m) general corporate accounting & finance; and (n) executive search. Accretive Solutions and its senior professionals

have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 proceedings.

9. John W. Chapman ("Chapman") is President and Principal of Corporate Forensics, Inc. Once the Debtors retained Accretive Solutions prepetition, Accretive Solutions retained Chapman as an independent contractor to assist Accretive Solutions in their engagement with the Debtors. Chapman has more than 25 years of experience in rendering financing, management and operational advisory services to financially distressed companies. Chapman has participated in many sales of distressed companies inside and outside of bankruptcy. Chapman has successfully served as chief executive officer or chief restructuring officer for companies similar to the Debtors.

10. The Debtors have selected Accretive Solutions as their financial advisor based upon, among other things, (a) the Debtors' need to retain a financial advisory firm to provide advice with respect to the Debtors' restructuring activities and (b) Accretive Solutions' extensive experience and excellent reputation in providing financial advisory and restructuring services in complex chapter 11 cases such as these cases. The Debtors believe that this institutional experience and knowledge, coupled with their knowledge of the Debtors obtained through their work with the Debtors prior to the Petition Date, will be valuable to the Debtors in their chapter 11 cases.

11. Accretive Solutions commenced its engagement with the Debtors on March 11, 2010 pursuant to an engagement letter (the "Engagement Letter"), a copy of which is attached hereto as Exhibit C. Pursuant to the Engagement Letter, the Debtors retained Accretive Solutions to provide financial advisory and consulting services. The Debtors and Accretive Solutions have worked closely with respect to the matters set forth in the Engagement Letter. Accretive Solutions has assisted the Debtors in the financial aspects of their restructuring efforts and in the Debtors' preparation of these bankruptcy cases.

4

12. On May 17, 2010 the Debtors' boards of directors (the "Boards of Directors") approved the retention and designation of Chapman as CRO. Chapman will receive no compensation directly from the Debtors resulting from his position as CRO. Rather, he will bill his time on an quarter-hour basis and Accretive Solutions will include the fees resuting from this time in its applications for compensation, as set forth herein.

13. The Debtors are familiar with the professional standing and reputation of Accretive Solutions. Indeed, consideration of this professional standing and reputation was a critical element in the Debtors' decision to enter into the Engagement Letter. Among other things, the Debtors understand that Accretive Solutions has a wealth of experience in providing financial advisory and consulting services in restructurings and reorganizations and enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

14. The Debtors believe that the services of Accretive Solutions will be critical to the Debtors' efforts to maximize the value of their estates. Further, the Debtors believe that Accretive Solutions is well qualified and able to represent the Debtors in a cost-effective, efficient and timely manner.

15. Accordingly, the Debtors wish to retain Accretive Solutions to provide assistance during these bankruptcy cases pursuant to the terms of the Engagement Letter.

## V.
## SERVICES TO BE RENDERED BY ACCRETIVE SOLUTIONS

16. Pursuant to the terms of the Engagement Letter, Accretive Solutions has provided, is providing, and will continue to provide such consulting, advisory, and professional restructuring services as Accretive Solutions and the Debtors deem appropriate and feasible in order to advise the Debtors in the course of these chapter 11 cases.

17. Chapman will serve as CRO of each of the Debtors. In addition to Chapman, certain other consultants from Accretive Solutions, including without limitation Frank Mack, will assist Chapman in rendering services to the Debtors, but none of these Accretive Solutions consultants will become employees of the Debtors.

18. Specifically, the services that Chapman and Accretive Solutions will render include, but are not limited to, the following:[3]

   a. performing a critical review of the Debtors' business and restructuring plans including, but not limited to, analysis of the Debtors' historical and projected results of operations and other information relative to the Debtors' core businesses and operational and financial review of the Debtors for the purpose of validating or revising the current baseline cash and financial projections underlying the Debtors' respective restructuring business plans;

   b. evaluating the various values of the Debtors' respective assets under different restructuring scenarios;

   c. reviewing, preparing, assisting, and analyzing the business plans, cash flow projections, restructuring programs, and other reports or analyses prepared by the Debtor or its professionals in order to advise the Debtors on the viability of the continuing operations and the reasonableness of projections and underlying assumptions in a Chapter 11 bankruptcy scenario;

   d. assisting the Debtors in preparing the respective Statements Of Financial Affairs and Schedules of Assets and Liabilities;

   e. assisting the Debtor in preparing an operational restructuring plan to be presented to any provider of post-filing financing;

   f. reviewing, evaluating, assisting, and analyzing the financial ramifications of proposed transactions for which the Debtor seeks Bankruptcy Court approval;

   g. assisting and advising the Debtors and their counsel in the development, evaluation, and documentation of any plans of reorganization or strategic transactions, including developing, structuring, and negotiating the terms and conditions of potential plans or strategic transactions, and the consideration that is to be provided to unsecured creditors thereunder;

---

[3] Capitalized terms not otherwise defined in this Application shall have the meanings ascribed to such terms in the Engagement Letter. This summary is solely for the benefit of the Court and parties in interest. To the extent that this summary and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter shall control.

6

h.  rendering testimony in connection with procedures (a) through (g) above, as required, on behalf of the Debtor; and

i.  performing such other financial advisory services as may be agreed upon my Accretive Solutions and the Debtors.

19.  It is expected that Chapman will be engaged on a full-time basis. Other personnel of Accretive Solutions will be engaged on either a full-time or part-time basis depending on the circumstances at the time of their engagements, but none of them will be employees of the Debtors.

20.  Chapman and Accretive Solutions' consultants understand that they shall act under the direction, control and guidance of the Debtors' Boards of Directors and that the Debtors' Boards of Directors may terminate Accretive Solutions' retention or Chapman's role as CRO.

## VI.
## PROFESSIONAL COMPENSATION

21.  Accretive Solutions' decision to advise and assist the Debtors in connection with these chapter 11 cases is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment, including the compensation arrangement set forth in the Engagement Letter (the "Fee Structure"), which provides that Accretive Solutions will charge the Debtors fees based upon hourly rates ranging from $125 (paraprofessional) to $650 (senior managing director).

22.  Accretive Solutions intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval, in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and any other applicable procedures and orders of the Court, and consistent with the Fee Structure. Accretive Solutions utilizes a 5-4-4 system to calculate its fiscal months and, as a result, the first fiscal month of each financial

quarter contains five weeks. Subject to the Court's approval, Accretive Solutions intends to file its fee applications consistent with its 5-4-4 accounting process, rather than on a calendar-month basis. The Debtors assert that the submission of monthly fee applications pursuant to Accretive Solutions' internal accounting processes is appropriate and to require Accretive Solutions to seek reimbursement of fees on a calendar-month basis would impose an unnecessary administrative burden on Accretive Solutions.

23. Prior to the Petition Date, the Debtors paid Accretive Solutions an aggregate retainer amount of $204,608 (the "Retainer") in connection with and in contemplation of, among other things, the Debtors' restructuring efforts and potential chapter 11 filings. The Retainer includes an initial retainer payment to Accretive Solutions of $25,000 on March 12, 2010, and the following supplemental replenishments of the retainer: $35,000 on March 17, 2010; $15,000 on March 22, 2010; $67,043.07 on April 9, 2010; $12,564.90 on April 16, 2010; $25,000 on April 22, 2010 and $25,000 on May 13, 2010. Invoices for professional advisory services rendered totaling $204,438 and applied against the continuing retainer were: $64,720.23 on March 21, 2010; $9,497.50 on March 28, 2010; $17,825.34 on April 4, 2010; $12,564.90 on April 11, 2010; $47,953.70 on April 18, 2010; $39,244.88 on April 25, 2010; and $12,631.71 on May 17, 2010. The Debtors exceeded their retainer by approximately $12,300 in the time period between April 25, 2010 and May 13, 2010. This balance was paid in full with the Retainer replenishment of $25,000 on May 13, 2010. The Debtors believe that Accretive Solutions is not owed any amounts with respect to its prepetition fees and expenses.

24. The Fee Structure is consistent with and typical of compensation arrangements entered into by Accretive Solutions and other comparable firms in connection with the rendering of similar services under similar circumstances. After an arm's length negotiation, the Debtors believe, as does Accretive Solutions, that the Fee Structure is in fact reasonable, market-based

and designed to compensate Accretive Solutions fairly for its work and to cover fixed and routine overhead expenses.

25. It is not the general practice of financial advising firms to keep detailed time records similar to those customarily kept by attorneys. Accretive Solutions will maintain records in support of any actual and necessary costs and expenses incurred in connection with the rendering of its services in these chapter 11 cases. Accretive Solutions will keep time records in quarter-hour increments describing its daily activities and the identity of persons who performed such tasks and file and serve them in accordance with any orders entered by the Court in these cases relating to the compensation of professionals. Also, Accretive Solutions will supplement this information with a list of the non-restructuring professionals who assist the restructuring department on this matter but who do not, as a matter of general practice (and would not in these chapter 11 cases), keep time records. In addition, apart from the time recording practices described above, Accretive Solutions' restructuring personnel do not maintain their time records on a "project category" basis. As such, the Debtors and Accretive Solutions request waiver of the requirement under Local Bankruptcy Rule 2016-2 that Accretive Solutions maintain its time records on a "project category" basis.

## VII.
## DISINTERESTEDNESS OF PROFESSIONALS

26. Accretive Solutions has informed the Debtors that, except as may be set forth in the Mack Declaration, it (i) has no connection with the Debtors, their creditors or other parties in interest in this case; (ii) does not hold or represent any interest adverse to the Debtors' estates; and (iii) believes it is a "disinterested person" as defined within Bankruptcy Code section 101(14).

27. Accretive Solutions has further informed the Debtors that it will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new material facts, connections or relationships are discovered or arise, Accretive Solutions will supplement its disclosure to the Court.

28. Accretive Solutions has also agreed not to share with any person or firm the compensation to be paid for professional services rendered in connection with these cases.

## VIII.
## INDEMNIFICATION

29. The Debtors will indemnify Accretive Solutions and its consultants, including Chapman, to the fullest extent permitted by applicable law, including advancement of expenses, which indemnification and advancement of expenses will continue for such period as may be reasonably required to continue to fully identify Accretive Solutions and Chapman for their acts during the term of their engagement. The Debtors will also cause Chapman to be covered by any current policies of directors' and officers' liability insurance, to the extent permitted by such policies and to the maximum extent of the coverage available for such individuals.

## IX.
## ARGUMENT

30. The Debtors seek approval of the Engagement Letter and Fee Structure contained therein pursuant to section 363 of the Bankruptcy Code, which provides, in relevant part, that the Debtors, "after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Under applicable case law, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents the reasonable business judgment on the part of the debtor, such use should be approved. See, e.g., Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (citing Fulton State Bank v. Schipper (In re Schipper), 933 F.3d 513, 515 (7th Cir. 1991)); In re Delaware & Hudson Ry. Co.,

124 B.R. 169, 175-76 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); In re Exide Technologies, Inc., Case No. 02-11125 (Bankr. D. Del. May 10, 2002 [Docket No. 217]); Committee of Asbestos-Released Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct"); Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986); Comm. of Equity Sec. Holders v. Lionel Corp (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983); In re Gulf States Steel, Inc., 285 B.R. 497, 514 (Bankr. N.D. Ala. 2002).

31.  The Debtors' decision to retain Accretive Solutions and its professionals is a sound exercise of the Debtors' business judgment. Chapman has extensive experience as a restructuring officer and as an advisor for financially troubled companies. The Debtors believe that Chapman, acting as CRO for the Debtors while working in conjunction with Accretive Solutions personnel, will provide services that are necessary to the Debtors and that will benefit the Debtors' estates and their creditors. In light of the foregoing, the Debtors believe that the retention of Accretive Solutions and its professionals is appropriate and in the best interest of the Debtors, their estates and their creditors.

32.  Bankruptcy Rule 2016 and Local Rule 2016-2 require retained professionals to submit applications for payment of compensation in chapter 11 cases. Additionally, Local Rule 2016-2(d) requires retained professionals to submit detailed time entries that set forth, among other things: a detailed description of each activity performed, the amount of time spent on the activity (in tenth of an hour increments), the subject matter of the activity and the parties

11

involved with the activity at issue. However, Local Rule 2016-2(g) allows a retained professional to request a waiver of the requirements of Local Rule 2016-2, for cause.

33. The Debtors submit that the requirements of Local Rule 2016-2(d) should be tailored to the nature of Accretive Solutions' engagement and its compensation structure. It is not the general practice of investment banking firms to keep detailed time records similar to those customarily kept by attorneys. Accretive Solutions' restructuring professionals, when formally retained in chapter 11 cases, and when required by local rules, do, and in these chapter 11 cases will, keep time records in quarter-hour increments describing their daily activities and the identity of persons who performed such tasks. Also, Accretive Solutions will supplement this information with a list of the non-restructuring professionals who assist the restructuring department on this matter but who do not, as a matter of general practice (and would not in these chapter 11 cases), keep time records. In addition, apart from the time recording practices described above, Accretive Solutions' restructuring personnel do not maintain their time records on a "project category" basis. As such, the Debtors and Accretive Solutions request waiver of the requirement under Local Rule 2016-2 that Accretive Solutions maintain its time records on a "project category" basis.

## X.
## NOTICE

34. Notice of this Application has been provided to: (i) the Office of the United States Trustee; (ii) the Internal Revenue Service; (iii) the Office of the United States Attorney for the District of Delaware; (iv) counsel to the Committee; (v) counsel to the Debtors' prepetition and postpetition lender; and (vi) counsel to the Buyer. In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

## XI.
## NO PRIOR REQUEST

35. The Debtors have not previously sought the relief requested herein from this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court: (i) enter an Order in substantially the same form as that attached as Exhibit D, granting the relief requested herein; and (ii) provide such other relief as the Court deems appropriate and just.

Dated: Wilmington, Delaware
May 28, 2010

Respectfully submitted,

LOCKE LORD BISSELL & LIDDELL LLP
David W. Wirt (Pro Hac Vice Motion Pending)
Aaron C. Smith (Pro Hac Vice Motion Pending)
Courtney E. Barr (Pro Hac Vice Motion Pending)
111 S. Wacker Drive
Chicago, Illinois 60606-4410
Telephone: (312) 443-0700
Fax: (312) 443-6653

-and-

POLSINELLI SHUGHART PC

/s/ *Christopher A. Ward*
Christopher A. Ward (Del. Bar No. 3877)
Justin K. Edelson (Del. Bar No. 5002)
Shanti M. Katona (Pro Hac Vice Motion Pending)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Fax: (302) 252-0921

PROPOSED COUNSEL FOR THE DEBTORS