# EXHIBIT A

# Declaration of David W. Wirt

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Barcalounger Corporation, et al.,[1] | ) | Case No. 10-11637 (BLS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Objection Deadline: June 14, 2010 at 4:00 p.m.** |
| | ) | **Hearing Date: June 21, 2010 at 9:30 a.m.** |
| | ) | |

## DECLARATION OF DAVID W. WIRT IN SUPPORT OF APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF LOCKE LORD BISSELL & LIDDELL LLP AS ATTORNEYS FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE

I, David W. Wirt, hereby declare that the following is true to the best of my knowledge, information and belief:

1.      I am a partner of the firm of Locke Lord Bissell & Liddell LLP ("LLBL" or the "Firm"),[2] which maintains an office for the practice of law at, among other locations, 111 South Wacker Drive, Chicago, Illinois 60606. I am admitted, practicing and a member in good standing of the bars of the State of Illinois and the United States District Court for the Northern District of Illinois.

2.      I submit this declaration and statement in support of the Application For Entry of an Order Authorizing Employment and Retention of Locke Lord Bissell & Liddell LLP as Attorneys for the Debtors *Nunc Pro Tunc* to the Petition Date (the "Application") filed concurrently herewith by the above-captioned debtors and debtors in possession (collectively, the

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Barcalounger Corporation (9018); and American of Martinsville, Inc. (6836). The location of the Debtors' corporate headquarters and service address is: 128 East Church Street, Martinsville, Virginia 24112.

[2]  Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the Application (as defined herein).

"Debtors" or the "Company"). Except as otherwise indicated, I have personal knowledge of the matters set forth herein and, if called as a witness, would testify competently hereto.[3]

## I.
## QUALIFICATION OF PROFESSIONALS

3.  LLBL understands that the Debtors selected LLBL as their restructuring counsel because of the Firm's experience and knowledge in the field of debtors' and creditors' rights and business reorganizations under chapter 11 of the Bankruptcy Code. LLBL believes that it has assembled a highly qualified team of attorneys to service the Debtors during their restructuring process.

4.  I am a partner in, and the chair of, the Firm's Bankruptcy and Restructuring practice group and generally will be responsible for leading the Firm's representation of the Debtors in these chapter 11 cases. I have extensive experience in bankruptcy and restructuring matters.

5.  Prior to the commencement of these chapter 11 cases, the Debtors sought the services of LLBL with respect to, among other things, advice regarding restructuring matters in general and preparation for a potential chapter 11 filing. During this period, LLBL worked diligently to understand the Debtors' business operations, capital structure, and restructuring efforts. In this regard, LLBL performed extensive legal work under very tight time constraints for the Debtors in connection with their ongoing restructuring efforts including, but not limited to, certain corporate, litigation, financing, and creditor issues, as well as other significant matters. As a result of representing the Debtors on such matters, LLBL acquired a substantial amount of knowledge of the Debtors and their business and is familiar with the Debtors' capital structure, corporate structure, financing documents, and other material agreements.

---

[3] Certain of the disclosures herein relate to matters within the knowledge of other attorneys at LLBL and are based on information provided by them.

2

## II.
## SERVICES TO BE RENDERED

6.      The Debtors and LLBL entered into an Engagement Agreement dated as of

March 15, 2010 (the "Engagement Agreement"), which is attached hereto as Exhibit 1.  The

Debtors have requested that LLBL render various services to the Debtors in connection with this

case including, *inter alia*:

(a)      advising the Debtors with respect to their powers and duties as debtors and debtors in possession in the continued management and operation of their business and properties;

(b)      advising and consulting on the conduct of the Debtors' bankruptcy cases, including all of the legal and administrative requirements of operating in chapter 11;

(c)      attending meetings and negotiating with representatives of creditors, Debtors' employees and other parties in interest;

(d)      advising the Debtors in connection with any contemplated sales of assets or business combinations, including the negotiation of asset, stock purchase, merger or joint venture agreements, formulating and implementing bidding procedures, evaluating competing offers, drafting appropriate corporate documents with respect to the proposed sales, and counseling the Debtors in connection with the closing of such sales;

(e)      advising the Debtors in connection with postpetition financing and cash collateral arrangements and negotiating and drafting documents relating thereto, providing advice and counsel with respect to prepetition financing arrangements, and providing advice to the Debtors in connection with the emergence financing and capital structure, and negotiating and drafting documents relating thereto;

(f)      advising the Debtors on matters relating to the evaluation of the assumption, rejection or assignment of unexpired leases and executory contracts;

(g)      providing advice to the Debtors with respect to legal issues arising in or relating to the Debtors' ordinary course of business including attendance at senior management meetings, meetings with the Debtors' financial and turnaround advisors and meetings of the board of directors, and advice on employee, workers' compensation, employee benefits, executive compensation, tax, environmental, banking, insurance, securities, corporate, business operation, contracts, joint ventures, real property and press/public affairs and regulatory matters;

(h)     taking necessary action to protect and preserve the Debtors' estates, including the prosecution of actions and proceedings on their behalf, the defense of any actions and proceedings commenced against those estates, negotiations concerning all litigation in which the Debtors may be involved and objections to claims filed against the Debtors' estates;

(i)     preparing on behalf of the Debtors motions, applications, answers, orders, reports and papers necessary to the administration of the Debtors' estates;

(j)     negotiating and preparing on the Debtors' behalf plan(s) of reorganization or liquidation, disclosure statement(s) and all related agreements and/or documents and taking any necessary action on behalf of the Debtors to obtain confirmation of such plan(s);

(k)     attending meetings with third parties and participating in negotiations with respect to the above matters;

(l)     appearing before this Court, other courts, and the Office of the United States Trustee;

(m)     meeting and coordinating with other counsel and other professionals retained on behalf of the Debtors and approved by this Court; and

(n)     performing all other necessary legal services and providing all other necessary legal advice to the Debtors in connection with these chapter 11 cases.

7.     Subject to this Court's approval of the Application, LLBL is willing to serve as

the Debtors' counsel and to perform the services described above.

## III.
## DISINTERESTEDNESS OF LLBL

8.     To the best of my knowledge, except as set forth herein, the partners and

associates of LLBL (a) do not have any connection with the Debtors or their affiliates, their

creditors, the United States Trustee or any person employed in the office of the United States

Trustee, or any other significant party-in-interest, or their respective attorneys and accountants

except as otherwise set forth herein, (b) are "disinterested persons," as that term is defined in

section 101(14) of the Bankruptcy Code, and (c) do not hold or represent any interest adverse to

the estates.

9.      In preparing this Declaration, we used a set of procedures established by LLBL to insure compliance with the requirements of the Bankruptcy Code and the Bankruptcy Rules regarding retention of professionals by a debtor under the Bankruptcy Code.

10.     In that regard, LLBL requested and obtained from the Debtors a list of the names of entities who may be parties in interest in these chapter 11 cases, including inter alia, secured creditors, the largest unsecured creditors, insurers, and the directors and officers of the Debtors (the "Potential Parties In Interest"). The Potential Parties In Interest are listed on Exhibit 2 attached hereto.

11.     LLBL maintains and systematically updates its conflict check system in the regular course of its business, and it is the regular practice of LLBL to make and maintain these records. The conflict check maintained by LLBL is designed to include (i) every matter on which it is now or has been engaged; (ii) the entity by which it is now or has been engaged; (iii) the identity of related parties; (iv) the identity of adverse parties; and (v) the attorney in LLBL that is knowledgeable about the matter. It is the policy of LLBL that no new matter may be accepted or opened within the firm without completing and submitting to those charged with maintaining the conflict check system the information necessary to check each such matter for conflicts, including the identity of the prospective client, the matter, and the related and adverse parties. Accordingly, the database is updated for every new matter undertaken by LLBL. The scope of the system is a function of the completeness and accuracy of the information submitted by the attorney opening a new matter.

12.     Through the procedures set forth above, LLBL has determined that it has in the past represented, currently represents, and/or may in the future represent, in matters wholly unrelated to these cases, certain Potential Parties In Interest. Exhibit 3 sets forth those Potential

Parties In Interest who are current clients of the Firm, or who are former clients of the Firm, but from whom the Firm has received fees in the past twenty-four months. LLBL has not in the past represented any Potential Party in Interest, including those set forth in Exhibit 3, in any matter adverse to the Debtors and will not do so during the Debtors' bankruptcy cases.

13.     Moreover, I do not believe that any single client listed on Exhibit 3 (including affiliates of Potential Parties in Interest) paid legal fees to LLBL that represent more than one quarter of one percent (0.25%) of LLBL's annual fees received for the twelve months ended December 31, 2009. In any event, LLBL will not represent any of the foregoing claimants or any party in interest in any facet of the Debtors' cases.

14.     Insofar as I have been able to ascertain, neither I, LLBL, nor any partner, associate or other counsel associated with LLBL, has in the past represented any Potential Party In Interest, except as hereinafter set forth.

15.     I do not believe that there is any connection or interest (as such terms are used in section 101(14)(C) of the Bankruptcy Code and Bankruptcy Rule 2014(a)) between LLBL and (i) the United States Trustee or any person employed by the Office of the United States Trustee, or (ii) any counsel, accountants, financial consultants and investment bankers who represent or may represent claimants or other parties in interest in these cases. In addition, as part of its practice, LLBL appears in cases, proceedings, and transactions involving many different attorneys, co-counsel, accountants, financial consultants and investment bankers, some of which now or may in the future represent claimants and parties in interest in these cases. LLBL has not and will not represent any such entities in relation to the Debtors and these chapter 11 cases nor have any relationship with any such entities that would be adverse to the Debtors or their estates in the matters upon which LLBL is to be employed.

6

16.    Neither LLBL nor any attorney or employee at the Firm is or was a creditor, an equity holder, or an insider of the Debtors, except that LLBL previously rendered legal services to the Debtors for which it was compensated.

17.    Neither LLBL nor any attorney or employee at the Firm is or has been a director, officer or employee of the Debtors.

18.    LLBL does not have an interest materially adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders by reason of any direct or indirect relationship to, or connection with, the Debtors, or for any other reason.

## Specific Disclosures

19.    As specifically set forth below and in the annexed exhibits, LLBL represents or has represented certain of the Debtors' creditors and other parties in interest in ongoing matters unrelated to the Debtors and these chapter 11 cases. None of the representations described herein are materially adverse to the interests of the Debtors' estates. Moreover, pursuant to section 327(c) of the Bankruptcy Code, LLBL is not disqualified from acting as the Debtors' counsel merely because it represents the Debtors' creditors, equity security holders or other parties in interest in matters unrelated to these chapter 11 cases.

### 1.    Relationships With Dell, Inc.

20.    LLBL has determined that it has represented in the past, currently represents and may in the future represent Dell, Inc., the parent company of Dell Financial Services, LP in matters unrelated to the Debtors. None of the fees from any of these matters represented more than approximately one-quarter of one percent 0.25% of LLBL's fee receipts for the last twenty-four months.

21.    I do not believe that LLBL's current and prior representation of certain of the Debtors' creditors precludes LLBL from being a disinterested party under the Bankruptcy Code.

## 2.    Relationships With Insurers

22.    LLBL has determined that it has represented in the past, currently represents and may in the future represent four of the Debtors' Insurers, including Travelers Property & Casualty Company of America, St. Paul Fire & Marine Insurance Company, together with numerous affiliates of these Insurers, National Union Fire Insurance Company of Pittsburgh PA, and Fireman's Fund, each in matters unrelated to the Debtors. None of the fees from any of these matters represented more than approximately one-quarter of one percent 0.25% of LLBL's fee receipts for the last twenty-four months.

23.    I do not believe that LLBL's current and prior representation of certain of the Debtors' insurers precludes LLBL from being a disinterested party under the Bankruptcy Code.

## 3.    Relationships With Waste Management, Inc.

24.    LLBL has determined that it has represented in the past, currently represents and may in the future represent Waste Management, Inc. in matters unrelated to the Debtors. None of the fees from any of these matters represented more than approximately one-quarter of one percent 0.25% of LLBL's fee receipts for the last twenty-four months.

I do not believe that LLBL's current and prior representation of certain of the Debtors' insurers precludes LLBL from being a disinterested party under the Bankruptcy Code.

## 4.    Relationships With Accretive Solutions

25.    LLBL has determined that it has represented in the past, currently represents and may in the future represent Accretive Solutions, the Debtors' proposed financial advisor, in certain matters unrelated to the Debtors. None of the fees from any of these matters represented

more than approximately one-quarter of one percent 0.25% of LLBL's fee receipts for the last twenty-four months.

26.   I do not believe that LLBL's current and prior representation of Accretive Solutions precludes LLBL from being a disinterested party under the Bankruptcy Code.

27.   Other than as set forth above and herein, as of the date of this Declaration, I am not aware of any creditors of the Debtors or other Potential Parties In Interest that the Firm currently represents on matters unrelated to the Debtors or their chapter 11 cases.

28.   LLBL has instituted and is carrying on further inquiries of its partners and associates with respect to the matters contained herein. LLBL will file supplemental declarations regarding this retention if any additional relevant information comes to its attention.

29.   In view of the foregoing, LLBL is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.

## IV.
## PROFESSIONAL COMPENSATION

30.   The Engagement Agreement provided that LLBL would provide the Debtors with monthly invoices for the services and out-of-pocket expenses incurred on the Debtors' behalf. The Engagement Agreement instituted and confirmed the implementation of a retainer program for payment of LLBL's fees and expenses.

31.   Prior to the Petition Date, the Debtors paid LLBL an aggregate retainer amount of $180,000 (the "Retainer") in connection with and in contemplation of, among other things, the Debtors' chapter 11 filings. On March 18, 2010, LLBL received an aggregate initial retainer payment of $50,000. On April 13, 2010 the Debtors increased the Retainer by $30,000 to $80,000. On April 14, 2010, LLBL applied the Retainer to pay invoices dated April 14, 2010 in the total amount of $73,152. On April 16, 2010, American of Martinsville replenished the

9

Retainer in the amount of $100,000. On April 26, 2010, LLBL applied the Retainer to pay invoices dated April 14, 2010 leaving a retainer balance of $6,806.52. Between April 26, 2010 and the Petition Date, LLBL generated an additional $35,351 in legal fees on behalf of the Debtors. To the extent that these fees and associated costs exceed the balance of the Retainer, such fees and costs will be written off.

32.     Pursuant to the Engagement Agreement, at the conclusion of LLBL's representation of the Debtors, any credit balance remaining under the Retainer will be refunded to the Debtors. As of May 21, 2010 (the last date on which LLBL's books and records were reviewed in connection with the preparation of this Application), after application of all prepetition fees, charges, and disbursements incurred and posted as of that date, the balance of the retainer was $6,806.52.

33.     During the course of these chapter 11 cases, LLBL will invoice the Debtors no less frequently than monthly for services rendered and charges and disbursements incurred. Such invoices will constitute a request for interim payments against the Firm's reasonable fee to be determined at the conclusion of these cases. LLBL intends to apply to the Court for allowance of compensation for professional services rendered and reimbursement of expenses incurred in these Chapter 11 Cases in accordance with applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules and Orders of this Court and any orders issued by the Court in these cases related to the payment of professional fees.

34.     For professional services, LLBL's fees are based in part on its guideline hourly rates, which are periodically adjusted. Presently, the hourly rates under the rate structure range from $405 to $860 for partners, $260 to $590 for associates and $135 to $285 for paralegals and

10

research assistants. The hourly rates set forth above are subject to periodic increases in the normal course of the Firm's business, often due to the increased experience of the particular professional.

35.    The hourly rates set forth above are the Firm's standard hourly rates for work of this nature. These rates are set at a level designed to compensate LLBL fairly for the work of its attorneys and paralegals. Consistent with the Firm's policy with respect to its other clients, LLBL will continue to charge the Debtors for all other services provided and for other charges and disbursements incurred in the rendition of services. These charges and disbursements include, among others, costs of telephone charges, photocopying, travel, business meals (but no overtime meals), computerized research, messengers, couriers, postage, witness fees and other fees related to trials and hearings. A schedule of fees for typical out-of-pocket charges and disbursements charged by LLBL is set forth in Exhibit 4 to this Declaration, and is subject to increase from time to time.

36.    LLBL has agreed to accept as compensation such sums as may be allowed by this Court on the basis of the professional time spent, the rates charged for such services, the necessity of such services to the administration of the estate, the reasonableness of the time within which the services were performed in relation to the results achieved, and the complexity, importance, and nature of the problems, issues or tasks addressed in these chapter 11 cases.

37.    Other than as set forth above, no arrangement is proposed between the Debtors and LLBL for compensation to be paid in this case. Moreover, LLBL has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted under section 504(b)(1) of the Bankruptcy Code.

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge and belief.

Executed this 28th day of May, 2010

LOCKE LORD BISSELL & LIDDELL LLP

By:     */s/ David W. Wirt*
      David W. Wirt

# EXHIBIT 1

## Engagement Agreement



111 South Wacker Drive
Chicago, IL 60606
Telephone: 312-443-0700
Fax: 312-443-0336
www.lockelord.com

David W. Wirt
Direct Telephone: 312-443-0256
Direct Fax: 312-896-6256
dwirt@lockelord.com

March 15, 2010

**VIA ELECTRONIC MAIL**
Mr. Eric F. Plott
Chief Operating Officer
American of Martinsville, Inc. and
  Barcalounger Corporation
128 East Church Street
Martinsville, VA 24112

### Re: <u>Engagement of Locke Lord Bissell & Liddell LLP</u>

Dear Mr. Plott:

Thank you for selecting Locke Lord Bissell &Liddell LLP to represent American of Martinsville, Inc. ("AMI") and Barcalounger Corporation ("BC", and together with AMI, the "Companies") in connection with restructuring issues respecting the Companies. Our firm's policy at the outset of an engagement with a new client is to outline not only the nature of the engagement, but also the basis on which the firm will provide legal services and bill for them.

<u>Nature of Engagement</u>: As we discussed, for all matters which you may, from time to time, request our assistance, the firm's client will be the Companies and not any employee of the Companies. The scope of our engagement will be in connection with a restructuring of the Companies credit facilities and, if necessary, a chapter 11 bankruptcy filing. We have agreed that our present engagement is limited to performance of services related to this matter and other various matters which you may from time to time request our assistance. You are engaging the firm to provide legal services in connection with a specific matter. After completion of the matter, changes may occur in the applicable laws or regulations that could have an impact upon your future rights and liabilities. Unless you actually engage us after the closing of this matter to provide additional advice on issues arising from the matter, the firm has no continuing obligation to advise you with respect to future legal developments.

<u>Fees</u>: Although I will be the attorney responsible for this engagement, portions of the work may be performed by other firm attorneys and legal assistants, as necessary. Our hourly rates for partners range from $405 to $900; for associates, from $200 to $590; and for legal assistants, from $135 to $285. Our billing rates are subject to adjustment from time to time, usually in January of each year. We reserve the right to impose additional charges for

extraordinary results, after consultation with you. As indicated above, the principal basis for computing our fees will be the time and effort expended on this matter. We also take into account all of the factors a lawyer generally considers in billing a client, such as the difficulty or novelty of the matter, the time limitations and other pressures involved in performing the services, the particular expertise and experience of the lawyers who have worked on the matter and the results accomplished. For example, if the firm plays a material role in obtaining a result with benefits to the client that are disproportionate to the time expended, we may request a fee which more fairly reflects the value of our services to the client.

Costs: In addition to our fees, our bills will include allocable charges for costs and expenses incurred in performing our services, such as printing and reproduction services, mail, messenger and delivery services, computerized research, travel (including mileage, parking, air or rail fare, lodging, meals, taxi or car rental), telephone, facsimile or data transmission, secretarial and support staff overtime (when necessitated by the client's work), court costs and filing fees and other litigation support services, such as document scanning, coding and printing. Unless other arrangements are made, certain expenses (such as expert witnesses' fees and court reporters' charges) will be billed directly to you and will not be our responsibility.

Security Retainer: At the outset of our representation, you will remit to us (i) $50,000 as a security retainer, and (ii) an additional $50,000 upon notification that the Companies are going to prepare for a bankruptcy proceeding (together, the "retainer"). The retainer will be placed in a client trust account and will remain your property until earned by Locke Lord Bissell &Liddell LLP for services rendered. Each month, or more frequently as necessary, in which there is activity on your account, we will apply our fees and expenses against this payment, transfer the appropriate amount into our accounts, and send you a statement reflecting that application. If your credit balance falls below $25,000, we will so advise you and you will replenish the balance to $50,000 (or $100,000 as applicable) within two days thereof. At the conclusion of our representation, any credit balance remaining will be refunded to you, without interest.

Billing Arrangements: We render on-account bills monthly. Our statements generally will be prepared and mailed to you during the month following the month in which services are rendered. The firm expects that its clients will pay statements within 30 days. We reserve the right to defer providing services or to discontinue our representation if billed amounts are not paid when due.

Client Documents: We will maintain any necessary documents (including any electronic copies) relating to this matter in our client files. At the conclusion of the matter (or earlier, if appropriate), it is your obligation to advise us as to which, if any, of the documents in our files you wish us to make available to you. These documents will be delivered to you within a reasonable time after receipt of payment for outstanding fees and costs, subject to applicable rules of attorney conduct. We will retain any remaining documents in our files for a certain period of time, after which we will destroy them in accordance with our record retention program.

Other Clients: Locke Lord Bissell &Liddell LLP is a relatively large law firm and represents many other companies and individuals, some of whom may do business with you. We are requesting your agreement and consent that Locke Lord Bissell &Liddell LLP may represent other clients with whom you are doing business in their transactions or litigation with either you or third parties, even if the interests of such clients in those matters are directly adverse to you, provided that (1) the firm's representation of any other client in a transaction or litigation with you is not substantially related to its work for you, and (2) those attorneys who customarily work with you will not represent any other client in their transactions or litigation with you.

Joint Representation / Conflicts: We have been asked to jointly represent each of AMI and BC. As discussed, we believe there are advantages to such joint representation, including efficiency and reduction of costs, given the apparent alignment of interests between you, but a joint representation raises specific issues discussed below.

The rules of professional conduct that govern our profession provide that joint representation is proper only if each client provides his or its informed written consent to the joint representation. In any case of joint representation, there is a potential that the Firm's relationship with one client may adversely affect is ability to represent the other client with complete loyalty and exercise of independent judgment. Although the firm does not perceive any conflict of interest between you at this time, you each understand that conflicts could arise, for example, under the following circumstances:

- If you differ as to the appropriate strategy to be taken at any point during our representation of each of you in this matter;

- If negotiations conducted with respect to the matter result in opportunities that are more beneficial to one or more of you at the expense of any other or others of you; or

- If any disputes should develop between you, and positions are taken by one or more of you which are antithetical to the interests of any other or others of you.

We have no reason to believe that conflicts of interest such as those outlined above will arise during the course of this representation, and we do not perceive any potential adverse effects arising from the aforementioned hypothetical. Nevertheless, we bring this possibility to your attention to ensure that you are fully informed.

By signing this joint engagement letter, each of you expressly agrees that in the event that a conflict of interest arises with respect to any one or more of you, this Firm may continue to represent the remaining party to the joint representation, and, in such circumstances, no party hereto will seek this Firm's disqualification from further representation of the remaining party, in such capacity or in any individual or other capacity, notwithstanding such conflict of interest or

our receipt of confidential and otherwise privileged communications from any party or any other circumstances.

Termination of Representation: A client has the right at any time to terminate our services and representation upon written notice to the firm. Such termination shall not, however, relieve the client of the obligation to pay for all services already rendered, including work in progress and remaining incomplete at the time of termination, and to pay for all expenses incurred on behalf of the client through the date of termination.

We reserve the right to withdraw from our representation, if, among other things, the client fails to honor the terms of the engagement letter, the client fails to cooperate or follow our advice on a material matter, or any fact or circumstance would render our continued relationship unlawful or unethical or would otherwise authorize such termination, subject to applicable rules of professional conduct. In the event that we terminate the engagement, we will take such steps as are reasonably practicable to protect your interests in the above matter, and you agree on behalf of the client that it will take all steps necessary to free us of any obligation to perform further, including the execution of any documents necessary to perfect our withdrawal, and further that we will be entitled to be paid for all services rendered and costs or expenses incurred on behalf of the client through the date of withdrawal. If the client so requests, we will suggest to you possible successor counsel and provide it with whatever documents you have provided to us. If permission for withdrawal is required by a court, we will promptly apply for such permission, and you agree on behalf of the client to engage successor counsel to represent the client.

Please indicate your acceptance of the terms of this letter by signing and returning it to my attention. You may retain the enclosed copy for your files. Should you have any questions, please call me.

We appreciate the chance to be of service and look forward to working with you and your teams at AMI and BC.

Sincerely,

*/s/ David W. Wirt*

David W. Wirt

ACCEPTED AND AGREED
to this ___ day of March, 2010.

American of Martinsville, Inc. and

Barcalounger Corporation

_____
By:    Eric F. Plott
Their:   Chief Operating Officer

Mr. Eric F. Plott
March 15, 2010
Page 5

We appreciate the chance to be of service and look forward to working with you and your teams at AMI and BC.

Sincerely,

*/s/ David W. Wirt*

David W. Wirt

ACCEPTED AND AGREED
to this $\underline{16}$ day of March, 2010.

American of Martinsville, Inc. and

Barcalounger Corporation

By:    Eric F. Plott
Their:  Chief Operating Officer

# EXHIBIT 2

# Potential Parties in Interest

| | |
|---|---|
| **Debtors, Non-Debtor Affiliates and Former Trade Names** | American of Martinsville, Inc. Barcalounger Corporation |
| **Current and Former Officers, Directors and Managers** | Tom Yow Noel Chitwood Michael J. Fourticq, Jr. Michael J. Fourticq, Sr. Kevin L. Listen Eric Plott Larry Smith |
| **Significant Equity Holders** | Hancock Park Capital III, L.P. |
| **Significant Senior and Subordinated Debt Holders** | Capital Business Credit Hancock Park Associates |
| **Largest Unsecured Creditors** | Globe Express Services Ltd Moonart International, Inc. Sunrise Technologies, Inc. Market Sense City Of Rocky Mount Carpenter Company Moore & Giles Inc. MJB Wood Group Inc Leather Miracles, LLC HSO Logistics Inc. Universal Am-Can Ltd. Dell Financial Services, LP First Capital. Multi-Wall Pack Fibre Container Co Inc Sun Continental Logistics Inc. Quality Inn- Dutch Inn SV International Corp. Express Services, Inc. Ameristaff L&P Financial Services Co. Hettich America LP Fedex National Ltl Carroll Leather Zenda Leather Ultra Mek Dealer Imports Liko Vrhnika D.D. Hub Intl of CA Ins Services YRC Inc. |
| **Professional Service Providers** | Accretive Solutions |
| **Real Estate Landlords** | Binswanger Southern Inc. F & L, LLC Valley Properties |

| Insurance Companies and Brokers | Hub International of California Insurance Services |
|---|---|
| | Travelers Property & Casualty Company of America |
| | The Charter Oak Fire Insurance Company |
| | Travelers Property Casualty Company of America |
| | St Paul Fire & Marine Insurance Company |
| | National Union Fire Ins Co of Pittsburgh PA |
| | Fireman's Fund |
| | RSUI Indemnity Co |
| Utilities Companies | Appalachian Power |
| | Century Link |
| | Davenport Energy |
| | Henry County PSA |
| | Martinsville City Treasurer |
| | Waste Management |

# EXHIBIT 3

# Relationships with Potential Parties in Interest

LLBL currently represents and/or may in the future represent, in matters unrelated to these cases, the Potential Parties in Interest listed below. Any matter designated "Closed" refers to former client of LLBL for which LLBL has billed fees to the client within the two years prior to the Petition Date.

| Potential Party in Interest | LLBL Client or Former Client | Open/Closed Matter(s) | Nature of Representation |
|---|---|---|---|
| Dell Financial Services | Dell Inc. | Open | Corporate and litigation matters |
| Accretive Solutions | Accretive Solutions | Open | Corporate and litigation matters |
| Waste Management | Waste Management, Inc. | Open | Corporate and litigation matters |
| Waste Management | Waste Management of Louisiana, L.L.C. | Open | Corporate matters |
| Waste Management | Waste Management, Inc. | Closed | Corporate matters |
| Travelers Property Casualty Company of America | Travelers Indemnity Company and Travelers Property Casualty | Open | Insurance and litigation matters |
| Travelers Property Casualty Company of America | The Travelers Insurance Companies | Open | Corporate, litigation and insurance matters |
| Travelers Property Casualty Company of America | St. Paul Travelers | Open | Bankruptcy and litigation matters |
| Travelers Property Casualty Company of America | Travelers | Open | Litigation matters |
| St. Paul Fire & Marine Insurance Company | St. Paul Travelers [St. Paul Fire & Marine Insurance Co.] | Open | Corporate, litigation and insurance matters |
| St. Paul Fire & Marine Insurance Company | St. Paul Fire & Marine Insurance Co. | Open | Corporate, litigation and insurance matters |
| St. Paul Fire & Marine Insurance Company | St. Paul Travelers | Open | Bankruptcy and litigation matters |
| National Union Fire Insurance Company of Pittsburgh PA | National Union Fire Insurance Company of Pittsburgh PA | Closed | Corporate, litigation and insurance matters |
| Fireman's Fund | Fireman's Fund Insurance Company | Open | Corporate, litigation and insurance matters |
| Fireman's Fund | Fireman's Fund Insurance Company | Open | Corporate, litigation and insurance matters |

# EXHIBIT 4

# Fee Schedule

## CHARGES FOR DISBURSEMENTS AND OTHER EXPENSES

Locke Lord Bissell & Liddell LLP charges for disbursements and other expenses incurred on a client's behalf are based on the following schedule. This schedule is subject to periodic adjustment.

| | |
|---|---|
| Automobile Travel | IRS Approved Business Travel Allowance (Currently $0.50 Per Mile) |
| Computerized Legal Research | Lexis and Westlaw research charges are billed at the firm's discounted rate plus a small administrative cost. All others are actual invoice cost. |
| Courier And Overnight Delivery Services | Actual Invoice Cost |
| Copies | $0.10 Per Page For Black And White Copies, including scan to email (e-copier) and large print jobs. |
| | $1.00 Per Page For Color Copies |
| Postage | Actual Cost |
| Secretarial And Other Support Staff Overtime | $36.50 per hour |
| Telephone And Telecopier (FAX) | Long Distance Calls $0.08 Per Minute |
| | Outgoing Fax - $1.00 per page |
| Audio/Video Conferencing | Audio Conference - $0.30 per minute, per participant |
| | Video Conference: $1.00 Per Minute first City, $0.50 per minute for each additional City (outside the original city) |

**Litigation Support**
    Imaging
        Straight Feed

| | |
|---|---|
| Grade A | $0.12/page |
| Grade B | $0.13/page |
| Grade C | $0.15/page |
| Grade D | $0.17/page |
| Grade E | $0.20/page |

|                                      |                     |
|--------------------------------------|---------------------|
| 11 x 17 B/W                          | $0.22/page          |
| 8.5 x 11 - Color                     | $0.20/page          |
| 11 x 17 - Color                      | $0.30/page          |
| Optical Character Recognition        |                     |
| Vendor-scanned images                | $0.03/page          |
| In-house scanned images              | no charge           |
| OCR+6 (AL-Coder)                     | $0.02/page          |

Technology Services

| | |
|---|---|
| CD Mastering | $20.00/each |
| DVD Mastering | $35.00/each |
| CD Duplication | $10.00/each |
| DVD Duplication | $20.00/each |
| Floppy Duplication | $10.00/each |
| Bates Stamps | $0.01/each |
| File Naming | $0.25/file |
| EDD Conversion/Page | $0.03/page |
| EDD Conversion/GB | $1000/GB |

Document Blowbacks

| | |
|---|---|
| 8.5 x 11 BW Prints | $0.06/page |
| 11 x 17 BW Prints | $0.13/page |
| 8.5 x 11 Color | $0.95/page |
| 11 x 17 and Larger Color | $8.00/square foot |
| Separator Sheets | |
| Printed Slips | $0.25/per break |
| Blank Slips | no charge |

All services provided by outside vendors and miscellaneous other reimbursable expenses are billed at actual cost.