# EXHIBIT A

**BID PROCEDURES**

# BID PROCEDURES[1]

Set forth below are the bid procedures (the "Bid Procedures") to be employed by Barcalounger Corporation and American of Martinsville, Inc. (collectively, the "Debtors") with respect to the sale of the assets and operations (the "Acquired Assets") of the Debtors (the "Transaction"). It is contemplated that the Transaction will be implemented through a purchase agreement (the "Stalking Horse Agreement") with HPC3 Furniture Holdings, LLC, (the "Buyer"), subject to the receipt of higher and better bids according to these Bid Procedures.

---

## I.
## Important Dates

- (All times are prevailing Eastern time)

- **June ~~10~~ 16, 2010:** Debtors to send Cure Notices to All Contract Counterparties and Notice of the Sale

- **August 11, 2010 at 4:00 p.m.:** Cure Objection Deadline

- **August 11, 2010 at 4:00 p.m.:** Deadline to submit Bid to be considered for the Auction

- **August 16, 2010 at 10:00 a.m.:** Proposed date of Auction

- **August 17, 2010 at 10:00 a.m.:** Debtors to file notice of Successful Bidder and Contract Assignment Notices

- **August 11, 2010 at 4:00 p.m.:** Deadline to file and serve objections to relief requested at Sale Hearing (except for any objection that arises at the Auction)

- **August 18, 2010 at 11:00 a.m.:** Proposed date of Sale Hearing

---

## II.
## Approval of Bid Procedures and Bid Protections

The Debtors shall request that the Court set a hearing (the "Bid Procedures Hearing") to occur on or before June 7, 2010 to approve, among other things, the Bid Procedures and the bid protections set forth below. Any party in interest that wishes to oppose the entry of an order (the "Bid Procedures Order") approving the Bid Procedures or the bid protections must file with the Court a written objection pursuant to applicable Bankruptcy Rules and Local Rules on or before 5:00 p.m. (prevailing Eastern time) June 1, 2010 (the "Bid Procedures Objection Deadline").

---

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the motion to approve these Bid Procedures (the "Bid Procedures Motion").

# III.
# Marketing Process

**A.   Contact Parties**

The Debtors, in consultation with Accretive Solutions-Detroit, Inc. ("Accretive Solutions") have developed a list of parties who the Debtors believe may potentially be interested in and who the Debtors reasonably believe would have the financial resources to consummate a competing Transaction to that of the Buyer (a "Competing Transaction"), which list includes both potential strategic investors and liquidators (each, individually, a "Contact Party", and collectively, the "Contact Parties"). The Debtors shall consult with the Official Committee of Unsecured Creditors (the "Committee") on all aspects of the asset sale process. The Debtors and Accretive Solutions are already in the process of contacting the Contact Parties to explore their interest in pursuing a Competing Transaction. The Contact Parties may include parties whom the Debtors or their advisors have previously contacted regarding a Transaction, regardless of whether such parties expressed any interest, at such time, in pursuing a Transaction. The Debtors will continue to discuss and may supplement the list of Contact Parties throughout the marketing process, as appropriate.

The Debtors may distribute to each Contact Party an "Information Package," comprised of:

(a)   A cover letter;

(b)   a copy of these Bid Procedures; and

(c)   A copy of the confidentiality agreement attached hereto as Exhibit 1 (the "Confidentiality Agreement").

**B.   Access to Diligence Materials**

To participate in the bidding process and to receive access to any materials relating to the company (the "Diligence Materials"), a party must submit to the Debtors an executed Confidentiality Agreement.

A party who qualifies for access to Diligence Materials shall be a "Preliminarily Interested Investor." All due diligence requests must be directed to Accretive Solutions.

For any Preliminary Interested Investor who is a competitor of the Debtors or is affiliated with any competitor of the Debtors, the Debtors reserve the right to withhold any Diligence Materials that the Debtors, in consultation with the Committee, determine are business-sensitive or otherwise not appropriate for disclosure to such Preliminary Interested Investor.

**C.   Auction Qualification Process**

To be eligible to participate in the Auction, each offer, solicitation or proposal (each, a "Bid"), and each party submitting such a Bid (each, a "Bidder"), must be determined by the Debtors, in consultation with the Committee, to satisfy each of the following conditions:

2

1. <u>Good Faith Deposit</u>: Each Bid must be accompanied by a deposit in the amount of $150,000 to an interest bearing escrow account to be identified and established by the Debtors (the "<u>Good Faith Deposit</u>").

2. <u>Terms</u>: Bids(s) must be on terms that, in the Debtors' business judgment, after consultation with the Committee, are substantially the same or better than the terms of the Stalking Horse Agreement. A Bid must include executed transaction documents pursuant to which the Bidder proposes to effectuate the Competing Transaction (the "<u>Competing Transaction Documents</u>"). A Bid shall include a copy of the Stalking Horse Agreement marked to show all changes requested by the Bidder (including those related to purchase price). A Bid should propose a Competing Transaction involving substantially all, or a portion of, the Debtors' assets or operations. The Debtors will consider proposals for less than substantially all of the Debtors' assets or operations. The Debtors shall evaluate all Bids, in consultation with the Committee, to determine whether such Bid(s) maximizes the value of the Debtors' estates as a whole. A Bid to purchase substantially all of the Debtors' assets must propose a purchase price equal to the purchase price under the Stalking Horse Agreement plus the full amount of the $20,000 Expense Reimbursement (as defined below) plus $50,000. A bid to purchase only certain assets of the Debtors' shall be in the purchase price determined by such bidder but shall be reviewed by the Debtors to determine if it is acceptable in consultation with the Committee. The Competing Transaction Documents shall also identify any executory contracts and unexpired leases of the Debtors that the Bidder wishes to have assumed and assigned to it pursuant to the Competing Transaction (collectively, the "<u>Assigned Contracts</u>").

(3) <u>Corporate Authority</u>: Written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate authorization to consummate the proposed Competing Transaction; provided, however, that, if the Bidder is an entity specially formed for the purpose of effectuating the Competing Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtors, in consultation with the Committee, of the approval of the Competing Transaction by the equity holder(s) of such Bidder.

(4) <u>Proof of Financial Ability to Perform</u>: Written evidence that the Debtors, in consultation with the Committee, reasonably conclude demonstrates that the Bidder has the necessary financial ability to close the Competing Transaction and provide adequate assurance of future performance under all contracts to be assumed and assigned in such Competing Transaction. Such information should include, *inter alia,* the following:

   (a) contact names and numbers for verification of financing sources,

   (b) evidence of the Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the Competing Transaction;

   (c) the Bidder's current financial statements (audited if they exist); and

(d) any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors demonstrating that such Bidder has the ability to close the Competing Transaction; provided, however, that the Debtors shall determine, in their reasonable discretion, in consultation with the Debtors' advisors and the Committee, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Bidder's financial qualifications.

(5) Contingencies: A Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects at the closing of specified representations and warranties.

(6) Irrevocable: A Bid must be irrevocable through the Auction, provided, however, that if such Bid is accepted as the Successful Bid or the Backup Bid (as defined herein), such bid shall continue to remain irrevocable, subject to the terms and conditions of the Bid Procedures.

(7) Bid Deadline: Regardless of when a party qualifies as a Preliminarily Interested Investor, the Debtors and Committee must receive a Bid in writing, on or before August 11, 2010 at 4:00 p.m. (Eastern time) or such later date as may be agreed to by the Debtors with the consent of the Committee (the "Bid Deadline"). Bids must be sent to the following by the Bid Deadline to be considered: counsel for the Debtors, Locke Lord Bissell & Liddell, LLP, 111 S. Wacker Drive, Chicago, IL 60606, Attn: David W. Wirt and Aaron C. Smith, and Polsinelli Shughart PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801, Attn: Christopher A. Ward; financial advisors for the Debtors, Accretive Solutions, 145 West 57th Street, 9th Fl, New York, NY 10019, Attn: Frank R. Mack; and counsel for the Committee, Lowenstein Sandler PC, 65 Livingston Avenue, Roseland, NJ 07068, Attn: Bruce Buechler; and financial advisors to the Committee, NHB Advisors, Inc., 919 N. Market Street, Suite 1410, Wilmington, DE 19801, Attn: Ted Gavin.

A bid received from a Bidder before the Bid Deadline that meets the above requirements shall constitute a "Qualified Bid," and such Bidder shall constitute a "Qualified Bidder."

## IV.
## Auction

If more than one Qualified Bid is received by the Bid Deadline (other than the Stalking Horse Agreement), the Debtors will conduct an auction (the "Auction") to determine the highest and best Qualified Bid. This determination shall take into account any factors the Debtors, upon consultation with the Committee, reasonably deem relevant to the value of the Qualified Bid to the estate, including, *inter alia,* the following: (i) the amount and nature of the consideration; (ii) the proposed assumption of any liabilities and/or executory contracts or unexpired leases, if any; (iii) the ability

of the Qualified Bidder to close the proposed Transaction; (iv) the proposed closing date and the likelihood, extent and impact of any potential delays in closing; (v) any purchase price adjustments; (vi) the impact of the Transaction on any actual or potential litigation; and (vii) the net after-tax consideration to be received by the Debtors' estates (collectively, the "Bid Assessment Criteria"). If no Qualified Bid (other than the Stalking Horse Agreement) is received by the Bid Deadline, the Debtors, in consultation with the Committee, may determine not to conduct the Auction.

The Auction shall take place at 10:00 a.m. (prevailing Central time) on August 16, 2010, at the offices of Debtors' Delaware counsel, Polsinelli Shughart, 222 Delaware Avenue, Suite 1101, Wilmington, DE 19801 or such later time on such day or other place as the Debtors shall notify all Bidders who have submitted Qualified Bids. The Auction shall be transcribed or videotaped, and shall be conducted according to the following procedures:

### A. The Debtors Shall Conduct the Auction.

The Debtors and their professionals shall direct and preside over the Auction in consultation with the Committee. At the start of the Auction the Debtors shall describe the terms of the Stalking Horse Agreement or, in the event a higher and better Bid(s) is received, such Qualified Bid(s) (the "Auction Baseline Bid"). The Debtors' assets will be auctioned both in lots and for all of the assets in bulk at the Auction to determine the highest and best Bid(s).

All Bids made thereafter shall be Overbids (as defined below), and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all Bidders who have submitted Qualified Bids. The Debtors shall maintain a transcript of all bids made and announced at the Auction, including the Auction Baseline Bid and all Overbids.

### B. Terms of Overbids.

An "Overbid" is any bid made at the Auction subsequent to the Debtors' announcement of the Auction Baseline Bid. To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

#### (1) Minimum Overbid Increment.

Any Overbid after the Auction Baseline Bid shall be made in increments of at least $50,000 (the "Minimum Overbid Increment") for a bid for all of the Debtors' assets, and in an amount to be determined by the Debtors, in consultation with the Committee at the Auction, for lots; provided that the Debtors shall retain the right to modify the bid increment requirements at the Auction in consultation with the Committee. Additional consideration in excess of the amount set forth in the Auction Baseline Bid may include only cash, the assumption of debt or marketable securities, or a credit bid under section 363(k) of the Bankruptcy Code of an allowed secured claim of Capital Business Credit LLC, subject to the Committee's right to challenge such credit bid at the Auction or Sale Hearing, in any combination.

(2) **Remaining Terms are the Same as for Qualified Bids.**

Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline shall not apply. Any Overbid must remain open and binding on the Bidder until and unless the Debtors, in consultation with the Committee, accept a higher Overbid.

To the extent not previously provided (which shall be determined by the Debtors in consultation with the Committee), a Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors in consultation with the Committee) demonstrating such Bidder's ability to close the Competing Transaction proposed by such Overbid.

(3) **Announcing Overbids.**

The Debtors shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid and the resulting benefit to the Debtors' estates based on, *inter alia,* the Bid Assessment Criteria.

(4) **Consideration of Overbids.**

The Debtors reserve the right, in their reasonable business judgment, to make one or more adjournments in the Auction to, among other things: facilitate discussions between the Debtors and individual Bidders; allow individual Bidders to consider how they wish to proceed; and give Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors in their reasonable business judgment and in consultation with the Committee, may require, that the Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed Competing Transaction at the prevailing Overbid amount.

C. **Backup Bidder.**

Notwithstanding anything in the Bid Procedures to the contrary, if an Auction is conducted, the party with the next highest or otherwise best Qualified Bid(s) at the Auction, as determined by the Debtors, in the exercise of their business judgment and in consultation with the Committee, shall be required to serve as a backup bidder (the "Backup Bidder"). The Backup Bidder shall be required to keep its initial Bid (or if the Backup Bidder submitted one or more Overbids at the Auction, its final Overbid) (the "Backup Bid") open and irrevocable until the earlier of 5:00 p.m. (prevailing Eastern time) on the date that is fifteen (15) days after the date of the Sale Hearing (the "Outside Backup Date") or the closing of the transaction with the Successful Bidder. Following the Sale Hearing, if the Successful Bidder fails to consummate an approved transaction, because of a breach or failure to perform on the part of such Successful Bidder, the Debtors, in consultation with the Committee, may designate the Backup Bidder to be the new Successful Bidder, and the Debtors will be authorized, but not required, to consummate the transaction, with the Backup Bidder without further order of the Bankruptcy Court. In such case, the defaulting Successful Bidder's deposit shall be forfeited to the Debtors' estates, and the Debtors specifically reserve the right to seek all available damages from the defaulting Successful Bidder. The deposit

6

of the Backup Bidder shall be held by the Debtors until the earlier of 24 hours after (a) the closing of the transaction with the Successful Bidder and (b) the Outside Backup Date.

### D. Additional Procedures.

The Debtors, with the consent of the Committee, may announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time to make subsequent Overbids) for conducting the Auction so long as such rules are not inconsistent with these Bid Procedures.

### E. Consent to Jurisdiction as Condition to Bidding.

The Buyer, all Qualified Bidders, and all Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Stalking Horse Agreement, the Auction or the construction and enforcement of any Competing Transaction Documents.

### F. Closing the Auction.

The Auction shall continue until there is only one or more Qualified Bid(s) that the Debtors determine in their reasonable business judgment, after consultation with their financial and legal advisors and the Committee, is the highest and best Qualified Bid(s) at the Auction (the "Successful Bid" and the Bidder submitting such Successful Bid, the "Successful Bidder"). In making this decision, the Debtors, in consultation with their financial and legal advisors and the Committee, shall consider the Bid Assessment Criteria. The Auction shall not close unless and until all Bidders who have submitted Qualified Bids have been given a reasonable opportunity to submit an Overbid at the Auction to the then-existing Overbid and the Successful Bidder has submitted fully executed Transaction Documents memorializing the terms of the Successful Bid(s).

The Debtors shall not consider any bids submitted after the conclusion of the Auction.

### G. Expense Reimbursement.

If the Buyer attends the Auction with its Bid in place, and the Buyer is outbid, and the successful Bidder is a party other than Buyer, the Buyer shall, without further court order, be entitled to receive reimbursement of the reasonable, actual, out-of-pocket costs and expenses paid or incurred by Buyer directly incident to, under, or in connection with the negotiation, execution and performance under the Stalking Horse Agreement and the transactions contemplated thereunder (including travel expenses and reasonable fees and disbursements of counsel, accountants and financial advisors, excluding any charges for the time or services of Buyer's employees) in an amount not to exceed $20,000 in the aggregate ("Expense Reimbursement"). The Expense Reimbursement shall be paid immediately upon consummation of the sale transaction out of the proceeds of the sale and shall have priority as an administrative expense in the Debtors' cases under Sections 503(6) and 507(a) of the Bankruptcy Code.

*In order to be paid at Closing, Buyer must submit supporting documentation related to the Expense Reimbursement at least forty-eight hours prior to Closing.*

# V.
## Procedures for Determining Cure Amounts and Adequate Assurance for Counterparties to Assigned Contracts

By June ~~10~~ 16, 2010, the Debtors shall send a notice to each counterparty to an executory contract or unexpired lease setting forth the Debtors' calculation of the cure amount, if any, that would be owing to such counterparty if the Debtors decided to assume or assume and assign such executory contract or unexpired lease, and alerting such nondebtor party that their contract may be assumed and assigned to the Successful Bidder (the "Cure and Possible Assumption and Assignment Notice"), a copy of which is attached as Exhibit 2. Any counterparty that objects to the cure amount set forth in the Cure and Possible Assumption and Assignment Notice or the possible assignment of their executory contract or unexpired lease must file an objection (a "Cure or Assignment Objection") on or before 4:00 p.m. prevailing Eastern time on August 11, 2010 at 4:00 p.m. (Eastern time), which Cure or Assignment Objection must be served on counsel for the Debtors, Locke Lord Bissell & Liddell, LLP, 111 S. Wacker Drive, Chicago, IL 60606, Attn: David W. Wirt and Aaron C. Smith, and Polsinelli Shughart PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801, Attn: Christopher A. Ward, and counsel for the Committee, Lowenstein Sandler PC, 65 Livingston Avenue, Roseland, NJ 07068, Attn: Bruce Buechler, so that it is actually received no later than 4:00 p.m. prevailing Eastern time on August 11, 2010. If a counterparty does not timely file and serve a Cure or Assignment Objection, that party will be forever barred from objecting to (a) the Debtors' proposed cure amount, or (b) the assignment of that party's executory contract or unexpired lease to the Successful Bidder. Where a counterparty to an Assigned Contract files a timely Cure or Assignment Objection asserting a higher cure amount than the amount listed in the Cure and Possible Assumption and Assignment Notice, or an objection to the possible assignment of that counterparty's executory contract or unexpired lease, and the parties are unable to consensually resolve the dispute, the amount to be paid under section 365 of the Bankruptcy Code (if any) or, as the case may be, the Debtors' ability to assign the executory contract or unexpired lease to the Successful Bidder will be determined at the Sale Hearing.

# VI.
## Sale Hearing

The Debtors will seek a hearing (the "Sale Hearing") on or before August 18, 2010, at which hearing the Debtors will seek approval of the Transaction with the Successful Bidder. Objections to the sale of the Acquired Assets to the Successful Bidder or Backup Bidder must be filed and served so that they are actually received by the Debtors no later than 4.00 p.m. (prevailing Eastern time) on August 11, 2010 (except for any objection that arises at the Auction) on the following: counsel for the Debtors, Locke Lord Bissell & Liddell, LLP, 111 S. Wacker Drive, Chicago, IL 60606, Attn: David W. Wirt and Aaron C. Smith, and Polsinelli Shughart PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801, Attn: Christopher A. Ward, and counsel for the Committee, Lowenstein Sandler PC, 65 Livingston Avenue, Roseland, NJ 07068, Attn: Bruce Buechler.

## VII.
## Return of Good Faith Deposit

The Good Faith Deposits of all Qualified Bidders shall be held in one or more interest-bearing escrow accounts by the Debtors, but shall not become property of the Debtors' estates absent further order of the Court. The Good Faith Deposits of any Qualified Bidder that is neither the Successful Bidder nor the Backup Bidder shall be returned to such Qualified Bidder not later than two (2) business days after the Sale Hearing. The Good Faith Deposit of the Backup Bidder shall be returned to the Backup Bidder on the date that is the earlier of (i) two (2) business days after the Acquired Assets have been sold pursuant to the closing of a sale approved by the Bankruptcy Court and (ii) fifteen (15) days after conclusion of the Sale Hearing. Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon. If the Successful Bidder timely closes the winning transaction, its Good Faith Deposit shall be credited towards its purchase price.

# EXHIBIT 1

# CONFIDENTIALITY AGREEMENT

[Date]

[POTENTIAL PURCHASER]

To Whom It May Concern:

1.      Possible Transaction.  You have requested or may request certain information which is non-public, confidential or proprietary in nature from American of Martinsville, Inc. and Barcalounger Corporation, having their principal offices at 128 East Church Street, Martinsville, VA 24112 (together, the "Companies") in order to assist in your evaluation of a possible transaction with the Companies involving the purchase of certain assets of the Companies (a "Possible Transaction"). Subject to your delivery of a signed copy of this letter agreement (this "Confidentiality Agreement"), the Companies or its representatives will deliver or make available to you, upon the terms and subject to the conditions set forth in this Confidentiality Agreement, certain information about the assets.

2.      Evaluation Material.  All information about the Companies or the Possible Transaction furnished or made available by the Companies, its managing members, officers, employees, agents, consultants, financers, investors or advisers (legal, financial, accounting or otherwise) (such persons collectively referred to herein as "Representatives"), including, without limitation any third-party reports or materials that are subject to a confidentiality agreement between Companies or any of its affiliates and a third party, whether furnished before or after the date hereof, whether tangible or intangible and in whatever form or medium provided, whether written or orally furnished or made available, together with all notes, analysis, compilations, studies, summaries, data, interpretations, documents and other materials which contain, reflect or are generated or otherwise derived from such information, are referred to in this Confidentiality Agreement as "Evaluation Material". Evaluation Material does not include, however, information which: (a) is or becomes generally available to the public other than as a result of a disclosure by you or your Representatives; (b) is or becomes available to you on a nonconfidential basis from a source (other than the Companies or its Representatives) not known by you to be prohibited from disclosing such information to you by a legal, contractual or fiduciary obligation, provided that such latter information shall become Evaluation Material at such time as you or your Representatives become aware that the source of such Evaluation Material was prohibited from disclosing the same to you or your Representatives; or (c) you have the Companies' prior written consent to disclose to the identified recipient thereof. As used in this Confidentiality Agreement, the term "person" shall be broadly interpreted to include, without limitation, the media and any companies, partnership, group, limited liability companies, trust, other entity or individual.

3.      Confidentiality Undertaking.  You agree: (a) except as required by law (including legal or judicial process), the requirements or procedures of any regulatory or government authority or of any recognized securities exchange or listing authority and subject to the provisions of paragraph 5 below, to keep all Evaluation Material strictly confidential and not to disclose or reveal any Evaluation Material to any person other than to those of your Representatives with a need to know the information contained therein for the sole purpose of assisting you in the evaluation, analysis, negotiation, development or consummation of a Possible Transaction and to ensure that those persons are aware of the confidential nature of the Evaluation Material and of the terms of this Confidentiality Agreement; provided, that such Representatives shall have been provided with a copy of this Confidentiality Agreement; and provided, further, that you shall not use Evaluation Material

11

CHI1 1677157v.2

for any purpose other than solely in connection with the evaluation, analysis, negotiation, development or consummation of a Possible Transaction. You agree to take all reasonable measures to restrain your Representatives from prohibited or unauthorized disclosure or use of the Evaluation Material.

4. Use. You shall use the Evaluation Material only for the purpose of the Possible Transaction, or the evaluation thereof. No other rights or licenses to trademarks, inventions, copyrights, patents, or any other intellectual property are implied or granted under this Confidentiality Agreement or by the conveying or disclosure of the Evaluation Material. All Evaluation Material, unless otherwise specified in writing, shall be and remain the property of the Companies; provided however that in the event a Possible Transaction is consummated with you, all Evaluation Material shall become yours. The Evaluation Material supplied to you shall not be reproduced in any form except as required to accomplish the intent of this Confidentiality Agreement.

5. Notice of Required Disclosure. In the event that you or any of your Representatives are required (by deposition, interrogatories, requests for information or documents in legal or regulatory proceedings, by regulatory or governmental authorities, subpoena, civil investigative demand, regulatory process, compliance with listing or securities exchange laws or other similar process or applicable law) to disclose all or any part of the Evaluation Material or the information contained therein, you shall provide the Companies with prompt written notice of the existence, terms and circumstances surrounding any such request or requirement so that the Companies may seek a protective order or other appropriate remedy and/or waive compliance with the provisions of this Confidentiality Agreement (and if the Companies seeks such an order, to provide such cooperation as the Companies shall reasonably request at the Companies' expense). If, in the absence of a protective order or other remedy or the receipt of a waiver by the Companies, you or any of your Representatives are nonetheless, in the reasonable opinion of your counsel, legally compelled to disclose Evaluation Material to any such tribunal, you or your Representatives may, without liability hereunder (unless such disclosure was caused by or resulted from a previous disclosure by you or any of your Representatives that was not permitted by this Confidentiality Agreement), disclose to such tribunal only that portion of the Evaluation Material which such counsel reasonably advises you is legally required to be disclosed, provided that you exercise your reasonable efforts to preserve the confidentiality of the Evaluation Material in making such disclosure, including without limitation, by using reasonable attempts to obtain assurance that confidential treatment will be accorded the Evaluation Material by such tribunal.

6. Return or Destruction of Evaluation Material. At any time upon the Companies' request, you will, at the election of the Companies, promptly (and in any case within 7 days of any such request) deliver to the Companies or destroy all of the Evaluation Material without retaining any copy thereof and cause any remaining notes, photocopies and other materials derived from the Evaluation material to be destroyed, and provide to the Companies a written certification of an authorized executive officer as to such return and/or destruction. Notwithstanding the foregoing, any Evaluation Material prepared by you and incorporated into your corporate governance documents may be kept for corporate archive purposes only, provided that all such information shall continue to be kept confidential pursuant to the terms of this Confidentiality Agreement. Your return, destruction or retention of any such Evaluation Material will not affect any of your other obligations

CHI1 1677157v.2

under this Confidentiality Agreement, including, but not limited to, your obligations under paragraph 3 above.

7. **No Representations or Liability.** Neither the Companies nor any of its Representatives makes any representation or warranty, express or implied, as to the accuracy or completeness of the Evaluation Material. Neither the Companies nor any of its Representatives shall have any liability to you or to any of your Representatives, affiliates or stockholders on any basis (including, without limitation, in contract, tort, under federal or state securities laws or otherwise), and neither you nor your Representatives will make any claims whatsoever against the Companies or its Representatives, with respect to or arising out of or relating to: (a) the Possible Transaction involving the parties, as a result of this Confidentiality Agreement; (b) the participation of such party and its Representatives in evaluating the Possible Transaction involving the parties; (c) the review of or use or content of the Evaluation Material or any errors therein or omissions therefrom; or (d) any action taken or any inaction occurring in reliance on the Evaluation Material. The Companies will have the exclusive authority to determine what (if any) Evaluation Material is to be made available to you and your Representatives.

8. **No Solicitations for Employment.** Except as may be contemplated or required in the consummation of a Possible transaction, for a period of two years following the date hereof, you and your controlled affiliates will not, directly or indirectly, solicit for employment or hire any officer of the Companies or any of its subsidiaries or divisions with whom you have had contact or who became known to you in connection with your consideration of the Possible Transaction, except that you and your affiliates shall not be precluded from hiring any such employee who: (a) initiates discussions regarding such employment without any direct or indirect solicitation by you, any of your controlled affiliates or your Representatives; or (b) responds to any public advertisement or general solicitation placed or made by you; or (c) has been terminated by the Companies or their subsidiaries prior to commencement of employment discussions between you and such officer.

9. **Remedies.** You agree that money damages would not be a sufficient remedy for any breach of this Confidentiality Agreement by you or your Representatives, that in addition to all other remedies the Companies shall be entitled to specific performance and injunctive and other equitable relief as a remedy for any such breach, that such remedy shall not be deemed to be the exclusive remedy for breach of this Confidentiality Agreement but shall be in addition to all other remedies available at law or equity, and you further agree to waive, and to use your best efforts to cause your Representatives to waive, any requirement for the securing or posting of any bond in connection with such remedy. Notwithstanding anything appearing to the contrary in this Confidentiality Agreement, no direct or indirect partner, member or shareholder of either party hereto (or any officer, director, agent, member, manager, personal representative, trustee or employee of any such direct or indirect partner, member or shareholder) shall be personally liable for the performance of such party's obligations under this Confidentiality Agreement.

10. **Miscellaneous.**

Except as may be provided in that certain Letter Agreement to which this Confidentiality Agreement is attached: (a) neither the Companies nor you shall have any obligation to negotiate or

13

enter into a definitive agreement in relation to the Possible Transaction as a result of this Confidentiality Agreement. (b) The Companies reserve the right, in their sole and absolute discretion: (i) to conduct any process they deem appropriate with respect to any Possible Transaction or any other proposed transaction involving the Companies, and to modify any procedures relating to any such process without giving notice to you or any other person; (ii) to reject any proposal made by you or any of your affiliates or Representatives with respect to a transaction involving the Companies; and (iii) to terminate discussion and negotiations with respect to the Possible Transaction with you at any time. (c) You recognize that, except as may be expressly provided in any definitive agreement between you or any of your affiliates and the Companies: (x) the Companies and their affiliates and Representatives will be free to negotiate with, and to enter into any agreement or transaction with, any other person; and (y) you will not have any rights or claims against the Companies or any of its Representatives arising out of or relating to any Possible Transaction or other transaction involving the Companies. Any decision to proceed with negotiations or to consummate an agreement pertaining to the Possible Transaction shall be in each party's sole discretion and this Confidentiality Agreement creates no obligation on any party with respect thereto. Each party shall bear its own costs and expenses in connection with the activities contemplated by this Confidentiality Agreement.

(b) No failure or delay by a party hereto in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof, or the exercise of any right, power or privilege hereunder.

(c) This Confidentiality Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to its principles or rules regarding conflicts of laws. EACH PARTY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY WHICH MAY ARISE UNDER THIS CONFIDENTIALITY AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES, AND THEREFORE EACH PARTY HEREBY IRREVOCABLY WAIVES ANY RIGHT SUCH PARTY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS LETTER AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

(d) Notwithstanding anything to the contrary contained herein, your obligations with respect to Evaluation Material disclosed pursuant to this Confidentiality Agreement shall (unless extended by mutual agreement) expire or terminate upon the earlier of: (i) three (3) years after the date of this Confidentiality Agreement or (ii) the consummation with of a Possible Transaction with you.

(e) The provisions of this Confidentiality Agreement are severable and, if any provisions are determined to be void or unenforceable in whole or in part, the remaining provisions shall be binding and enforceable.

(f) This Confidentiality Agreement may not be amended except in writing and signed by an authorized representative of each party, and this Confidentiality Agreement shall be binding upon all employees, agents, subcontractors, subsidiaries, and affiliates of each party as provided herein.

(g) The provisions of this Confidentiality Agreement shall inure to the benefit of and be binding upon the parties and their respective successors and assigns. All modifications of, waivers of and amendments to this Confidentiality Agreement must be in writing and signed on behalf of you and the Companies.

(h) This Confidentiality Agreement expresses the entire agreement of the parties with respect to its subject matter. All prior or contemporaneous agreements or negotiations, written or oral, are hereby superseded.

Please confirm your agreement with the foregoing by signing where indicated below and returning a copy of this Confidentiality Agreement.

AMERICAN OF MARTINSVILLE, INC.
BARCALOUNGER CORPORATION

By: _____

Name: _____

Title: _____

Accepted and Agreed as of the date first written above:

[POTENTIAL PURCHASER]

By: _____

Name: _____

Title: _____

# EXHIBIT 2

# CURE AND POSSIBLE ASSUMPTION AND ASSIGNMENT NOTICE

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:                                              ) Chapter 11
                                                    )
BARCALOUNGER CORPORATION, et al.,[2]                ) Case No. 10-_____ (___)
                                                    )
           Debtors.                                 ) Joint Administration Requested
                                                    )

NOTICE TO COUNTERPARTIES TO POTENTIALLY ASSUMED
EXECUTORY CONTRACTS AND UNEXPIRED LEASES REGARDING CURE
AMOUNTS AND POSSIBLE ASSIGNMENT TO SUCCESSFUL BIDDER AT AUCTION

**PLEASE TAKE NOTICE** that on May 19, 2010, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed a motion (the "Bid Procedures and Sale Motion") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

**PLEASE TAKE FURTHER NOTICE** that on June 7, 2010, the Bankruptcy Court entered an order [Docket No. _____ ] (the "Bid Procedures Order") approving Bid Procedures (the "Bid Procedures"), which set key dates, times and procedures related to the sale of substantially of the Debtors' assets (the "Acquired Assets"). To the extent that there are any inconsistencies between the Bid Procedures and the summary description of the terms and conditions contained in this Notice, the terms of the Bid Procedures shall control.

YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE LISTED BELOW WITH ONE OR MORE OF THE DEBTORS:[3]

[Counterparty Name]          [Contract/Lease]              Cure Amount

**Pursuant to the Bid Procedures, the Debtors may assume the Executory Contract(s) or Unexpired Lease(s) listed above to which you are a counterparty. Also pursuant to the Bid Procedures, the Debtors may assign the Executory Contract(s) or Unexpired Lease(s) to the successful bidder (the "Successful Bidder") at an auction of substantially all of the Debtors' assets currently scheduled for August 16, 2010.** The Debtors have conducted a review of their books and records and have determined that the cure amount for unpaid monetary

---

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Barcalounger Corporation (9018); and American of Martinsville, Inc. (6836). The location of the Debtors' corporate headquarters and service address is: 128 East Church Street, Martinsville, Virginia 24112.

[3] This Notice is being sent to counterparties to Executory Contracts and Unexpired Leases. This Notice is not an admission by the Debtors that such contract or lease is executory or unexpired.

17

CH11 1677157v.2

obligations under such contract or lease is $[**AMOUNT**] (the "Cure Amount").[4] If you (a) object to the proposed assumption or disagree with the proposed Cure Amount, or (b) object to the possible assignment of such Executory Contract(s) or Unexpired Lease(s) to the Successful Bidder, **you must file an objection with the Bankruptcy Court no later than August 11, 2010,** (the "Objection Deadline") and serve such objection on the following parties:

| LOCKE LORD BISSELL & LIDDELL LLP | POLSINELLI SHUGHART PC |
|---|---|
| David W. Wirt<br>Aaron C. Smith<br>111 S. Wacker Drive<br>Chicago, Illinois 60606-4410<br>Telephone: (312) 443-0700<br>Fax: (312) 443-0336 | Christopher A. Ward (Del. Bar No. 3877)<br>Justin K. Edelson (Del. Bar No. 5002)<br>222 Delaware Avenue, Suite 1101<br>Wilmington, Delaware 19801<br>Telephone: (302) 252-0920<br>Fax: (302) 252-0921 |
| *Co-Counsel to the Debtors* | |

| Lowenstein Sandler PC<br><br>Bruce Buechler<br>65 Livingston Avenue<br>Roseland, NJ 07068<br>Telephone: (973) 597-2308<br>Fax: (973) 597 2309 | |
|---|---|
| *Counsel to the Committee* | |

| | |
|---|---|
| CLERK OF THE BANKRUPTCY COURT<br>United States Bankruptcy Court for the District of Delaware<br>824 North Market Street, 3rd Floor<br>Wilmington, DE 19801 | OFFICE OF THE UNITED STATES TRUSTEE FOR THE EASTERN DISTRICT OF DELAWARE<br>J. Caleb Boggs Federal Building<br>844 King Street, Suite 2008 – Lockbox #35<br>Wilmington, DE 19801 |

If no objection to the Cure Amount or the assignment of your Executory Contract(s) or Unexpired Lease(s) to the Successful Bidder is filed by the Objection Deadline, **you will be deemed to have stipulated that the Cure Amount as determined by the Debtors and set forth above is correct and you shall be forever barred, estopped and enjoined from (a) asserting any additional cure amount under the above-listed Executory Contract(s) and Unexpired Lease(s) or (b) objecting to the assumption and assignment of the above-listed Executory Contract(s) and Unexpired Lease(s) to the Successful Bidder.**

18

CH11 1677157v.2