# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| BARCALOUNGER CORPORATION, et al.,[1] | ) Case No. 10-11637 (BLS) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) Hearing Date: August 18, 2010 at 11:00 a.m. |
| | ) Objection Deadline: July 19, 2010 at 4:00 p.m. |

## MOTION FOR ENTRY OF AN ORDER (I) APPROVING SALE OF PROPERTY IN THE ORDINARY COURSE OF BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS AND INTERESTS PURSUANT TO 11 U.S.C. §§ 363(c)(1) AND 363(f), AND (II) ARRANGING FOR CUSTOMER TO PAY CERTAIN PREPETITION CLAIMS OF A WAREHOUSEMAN IN POSSESSION OF GOODS SUBJECT TO THE SALE

Barcalounger Corporation and American of Martinsville, Inc. (collectively, the "Debtors"), as debtors and debtors in possession in the above-captioned cases, hereby file their Motion for Entry of an Order (I) Approving Sale of Property in the Ordinary Course of Business Free and Clear of All Liens, Claims and Interests Pursuant to 11 U.S.C. § 363(c)(1) and 363(f), and (II) Arranging for Customer to Pay Certain Prepetition Claims of a Warehousemen in Possession of Goods Subject to the Sale (the "Motion"). In support of this Motion, the Debtors submit the Declaration of John W. Chapman in Support of the Motion (the "Chapman Declaration"), a copy of which is attached as Exhibit A. In further support hereof, the Debtors respectfully state:

## I.
## REQUEST FOR RELIEF

1. The Debtors file this Motion to seek authority to sell certain property, in the ordinary course of business and free and clear of all liens, claims and interests, to a customer,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Barcalounger Corporation (9018); and American of Martinsville, Inc. (6836). The location of the Debtors' corporate headquarters and service address is: 128 East Church Street, Martinsville, Virginia 24112.

GHG-McCamly Plaza, LLC (the "Customer"). The property that is the subject of the sale and this Motion (the "Property") is located in two places. Some of the Property is located at the Debtors' plant in Martinsville (the "Martinsville Goods"), and some of the Property is located at a third-party warehouse (the "Exel Goods") operated by Exel Transportation Services, Inc. ("Exel"). The Property is encumbered by the senior liens and claims of Capital Business Credit, LLC ("CBC"), the Debtors' prepetition and postpetition senior secured lender, pursuant to, and as acknowledged in, the prepetition lending documents and the Final Order (I) Authorizing Debtors to Obtain Postpetition Financing Pursuant to Section 364 of the Bankruptcy Code, (II) Authorizing the Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (III) Granting Liens and Superpriority Claims, and (IV) Granting Adequate Protection to the Prepetition Secured Party entered on June 18, 2010 [Docket No. 96] (the "DIP Order"). CBC has consented to the sale of the Property as set forth herein, and as senior secured lender, the liens and claims of CBC in the Property shall attach to the proceeds of the sale of the Property.

2.    Another entity, Henry County, Virginia ("Henry County"), has asserted that it has an alleged perfected lien on the Martinsville Goods as described in the Notice of Lien and Demand for Payment attached hereto as Exhibit B (the "Henry County Lien"). Prior to the Petition Date, Henry County entered the Debtors' plant in Martinsville, presumably with the assistance of the local sheriff's office, and roped off approximately 2,000 boxes of inventory, including the Martinsville Goods, with yellow police "Do Not Cross" tape. The Debtors dispute the status of the Henry County Lien, but regardless of the validity of that lien, the liens of CBC are superior to the Henry County Lien.[2]

3.    The Debtors seek to sell the Property free and clear of all liens, claims and

---

[2] It appears that Henry County attempted to perfect the Henry County Lien during the Debtors' preference period. The Debtors will file a complaint to dispute and avoid the Henry County Lien shortly after filing this Motion.

2

CH11 1676768v.5

interests, including those of CBC and Henry County, as provided under section 363(f) of the Bankruptcy Code. CBC has consented to the sale of the Property. Applicable nonbankruptcy law permits the Debtors to sell the Property free and clear of the Henry County Lien, and further, the Henry County Lien is in bona fide dispute. Moreover, Henry County can be compelled to accept a lien on the proceeds of the sale of the Property as a money satisfaction of its interest. The proceeds of the sale of the Property will be disbursed entirely to CBC to reduce the Debtors' debt owed to CBC. Accordingly, regardless of the validity of the Henry County Lien, CBC has consented to the sale of the Property under section 363(f)(2) of the Bankruptcy Code and accordingly, as the senior secured party (as established in the DIP Order), will receive the proceeds of the sale of the Property. The Debtors accordingly seek this Court's approval of the sale of the Property in the ordinary course of business under section 363(c)(1) of the Bankruptcy Code and free and clear of all liens, claims and interests, including those of CBC and Henry County, pursuant to section 363(f) of the Bankruptcy Code.

4.      Finally, the Debtors additionally seek, out of an abundance of caution, the authority to arrange for the Customer to pay a substantial portion of the prepetition claims of Exel against the Debtors, so that Exel will release the Exel Goods to the Customer.

## II.
## JURISDICTION AND VENUE

5.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these cases and this Motion is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory predicates for the relief requested herein are sections 105(a), 363(c), 363(f), 506, and 546(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules").

## III.
## BACKGROUND

7. On May 19, 2010 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court") commencing the above-captioned chapter 11 cases. The factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in detail in the Declaration in Support of the Chapter 11 Petitions and the First Day Pleadings dated May 19, 2010 [Docket No. 3] (the "First Day Declaration").[3]

8. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9. No trustee or examiner has been appointed in these chapter 11 cases. On May 28, 2010, the United States Trustee appointed an official committee of unsecured creditors (the "Committee").

## IV.
## DESCRIPTION OF THE ORDINARY COURSE SALE TRANSACTION

10. Prior to the Petition Date, the Debtors entered into a purchase order (the "Purchase Order") with the Customer. A copy of the Purchase Order is attached to the Chapman Declaration as Exhibit 1. Furniture and other related items have been delivered to the Customer in pieces over time pursuant to the Purchase Order. The last two portions of the goods due to the Customer are the Martinsville Goods and the Exel Goods. The total amount that the Customer currently owes to the Debtors on the Purchase Order is $120,000. The Customer wishes to take

---

[3] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Mack Declaration.

delivery of the Property and, postpetition, the Customer made a deposit of $15,000 with the Debtors in order to complete the sale. If the Court approves the relief requested in the Motion and the Debtors proceed with the sale of the Property, the Customer will make a payment to Exel in the amount of $42,857 (the "Exel Payment") in satisfaction of certain of the prepetition claims owed by the Debtors to Exel, so that Exel will agree to release the Exel Goods to the Customer. The remaining balance due on the sale, $62,143, will be paid by the Customer to the Debtors. These sale proceeds will be paid to CBC, as senior secured creditor, so that CBC may credit such amount against the balance of its loans to the Debtors.

## V.
## APPLICABLE AUTHORITY

**A.     Sections 363(c) and (f) of the Bankruptcy Code Authorize the Sale of the Property to the Customer Free and Clear of All Liens, Claims and Interests.**

11.    Section 363(c)(1) provides, in relevant part, that the Debtors may "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing...." 11 U.S.C. § 363(c)(1). Additionally, section 363(f) provides the Debtors with the ability to sell the Property to the Customer free and clear of any liens and claims:

> The [Debtor] may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents; ...or
> (4) such interest is in bona fide dispute.

11 U.S.C. § 363(f)(1), (2) and (4).[4]

---

[4] The Debtors reserve their right to assert additional bases for selling the Property free and clear of any liens under section 363(f) of the Bankruptcy Code, including any arguments arising under section 363(f)(5) ("such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.").

5

12. The sale of the Property is an ordinary course of business sale pursuant to section 363(c)(1). Further, the sale of the Property free and clear of all liens, claims and interests is authorized under section 363(f) of the Bankruptcy Code. One of the two entities claiming a lien over the Property is CBC, which holds a senior secured interest in the Property, and CBC has consented to the sale of the Property. Accordingly, the sale of the Property will be properly free and clear of CBC's liens and interests. 11 U.S.C. § 363(f)(2). Similarly, the Property should be sold free and clear of the alleged lien of the second entity claiming an interest in the Property, Henry County. Under applicable nonbankruptcy law, such as a state foreclosure action, the Property may be sold free and clear of Henry County's subordinate interests where the sale of the Property does not satisfy the liens and claims of the senior lien holder. 11 U.S.C. § 363(f)(1). Further, because the Henry County Lien is in bona fide dispute as a result of the Debtors pursuing the avoidance of the Henry County Lien, the Property may be sold free and clear of the Henry County Lien pursuant to section 363(f)(4) of the Bankruptcy Code.[5] A potential preference action by a debtor in possession against a creditor to avoid a lien is a "bona fide dispute" within meaning of section 363(f)(4) of the Bankruptcy Code. In re Millerburg, 61 B.R. 125, 128 (Bankr. E.D.N.C. 1986) (stating that "[t]he potential preference action against [the secured creditor] would certainly qualify as a bona fide dispute for purposes of § 363(f)(4)"). In sum, because the requirements of section 363(f) of the Bankruptcy Code are satisfied here, the sale of the Property should be made to the Customer free and clear of any liens, claims and interests.

---

[5] As explained above, while the Henry County Lien may attach to the proceeds of the sale of the Property (if proven to be valid and perfected), CBC's liens and interests in the Property are of a higher, more senior priority than the Henry County Lien. Thus, the liens of CBC attach to, and CBC may receive, all proceeds of the sale of the Property.

6

CHI1 1676768v.5

### B. The Customer's Payment of Certain Prepetition Claims Owed by the Debtors to Exel Should Be Authorized.

13.     The Debtors submit that, because the prepetition claims of Exel likely have "secured" status, and because Exel has possession of the Exel Goods, it is in the best interest of the Debtors' estates to permit the Customer to pay Exel for certain of Exel's prepetition claims against the Debtors, so that Exel may release the Exel Goods to the Customer. Quite simply, permitting the Customer to pay certain of Exel's prepetition claims is necessary to the consummation of the sale to the Customer.

14.     Under most state laws, a warehouseman such as Exel has a lien on the goods in its possession, which lien secures the charges or expenses incurred in connection with the transportation or storage of such goods. See, e.g., U.C.C. § 7-307(1) (providing in pertinent part that a "carrier has a lien on goods covered by a bill of lading for charges subsequent to the date of its receipt of the goods for storage or transportation (including demurrage and terminal charges) and for expenses necessary for preservation of the goods incident to their transportation or reasonably incurred in their sale pursuant to law."). Additionally, pursuant to section 363(e) of the Bankruptcy Code, Exel, as bailee, may be entitled to adequate protection in the form of a possessory lien. As a result, Exel is likely entitled to refuse to deliver or release the Exel Goods in its possession or control before certain of its prepetition claims have been paid to its satisfaction.

15.     Further, Bankruptcy Code section 506 provides that an "allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property." Under section 362(b)(3) of the Bankruptcy Code, perfection of such liens or interests, to the extent consistent with section 546(b) of the Bankruptcy Code, is expressly excluded from the automatic

7

stay of section 362(a).[6] Consequently, notwithstanding the automatic stay, the Debtors believe that Exel could perfect and assert liens or interests against the Exel Goods if certain of its related prepetition claims are not paid through operation of the sale of the Property to the Customer. Accordingly, authorizing the Debtors to proceed with the ordinary course sale of the Property to the Customer pursuant to the terms described herein and free and clear of the liens and claims of CBC and Henry County, is in the best interests of the Debtors' estates and their creditors.

## VI.
## WAIVER OF BANKRUPTCY RULE 6004

16. To successfully implement the relief requested in the Motion, the Debtors seek a waiver of the notice requirements under Rule 6004(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Further, Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The Debtors request that any order approving the relief requested herein be effective immediately and not subject to the 14-day stay provided under Bankruptcy Rule 6004(h).

## VII.
## RESERVATION OF RIGHTS

17. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.

---

[6] Section 546(b) provides that a debtor's lien avoidance powers "are subject to any generally applicable law that ... permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection...."

8

CH11 1676768v.5

## VIII.
## NOTICE

18. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel to the Committee; (iii) counsel to the Buyer; (iv) counsel to CBC; (v) the Customer; (vi) Exel; and (vii) Henry County. In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

## IX.
## NO PRIOR REQUEST

19. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court: (i) enter an Order in substantially the same form as that attached as Exhibit C granting the relief requested herein; and (ii) provide such other relief as the Court deems appropriate and just.

| | |
|---|---|
| Dated: Wilmington, Delaware<br>July 2, 2010 | Respectfully submitted,<br><br>LOCKE LORD BISSELL & LIDDELL LLP<br>David W. Wirt (Admitted Pro Hac Vice)<br>Aaron C. Smith (Admitted Pro Hac Vice)<br>Courtney E. Barr (Admitted Pro Hac Vice)<br>111 S. Wacker Drive<br>Chicago, Illinois 60606-4410<br>Telephone: (312) 443-0700<br><br>-and-<br><br>POLSINELLI SHUGHART PC<br><br>/s/ Christopher A. Ward<br>Christopher A. Ward (Del. Bar No. 3877)<br>Justin K. Edelson (Del. Bar No. 5002)<br>222 Delaware Avenue, Suite 1101<br>Wilmington, Delaware 19801<br>Telephone: (302) 252-0920<br>Fax: (302) 252-0921<br><br>COUNSEL FOR THE DEBTORS |