# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BARCALOUNGER CORPORATION, *et al.*,[1] | Case No. 10-11637 (BLS) |
| | Jointly Administered |
| Debtors. | |

## ORDER APPROVING SALE OF BUSINESS-RELATED ASSETS
## FREE AND CLEAR OF CLAIMS, LIENS, ENCUMBRANCES AND INTERESTS

Upon consideration of the Debtors' Motion (the "**Motion**") for Entry of an Order (i) Approving an Asset Purchase Agreement Between the Debtors and the Buyer, or Such Other Purchase Agreement(s) Between the Debtors and the Successful Bidder; (ii) Authorizing the Sale of All or Substantially All of the Assets of the Debtors Free and Clear of All Liens, Claims, Encumbrances and Other Interests (the "**Sale**"); (iii) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith; and (iv) Grating Related Relief; a hearing on the Sale portion of the Motion having been conducted (the "**Sale Hearing**"); and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors and their creditors; and the Court having made additional findings of fact and conclusions of law set forth below; and upon the proceedings had before the Court, good and sufficient cause appearing therefor; and defined terms used but not defined in this Sale Order shall have the meaning set forth in the Asset Purchase and Liquidation Sale Agreement (the "**Agreement**") by and among HPC3 Furniture Holdings, LLC, Liquid Asset Partners, LLC and Joerns Healthcare Operating, LLC (collectively, the "**Buyers**") on the one

---

[1] The debtors in these Chapter 11 cases along with the last four digits of each debtors' federal tax identification number are: (i) Barcalounger Corporation (9018) and (ii) American of Martinsville, Inc. (6836).

{00086574.DOC; 2}

hand and the Debtors on the other hand; a copy of the Agreement is attached as <u>Exhibit A</u> hereto, or the Solicitation, Bid and Auction Procedures, as applicable;

THE COURT HEREBY FINDS AND DETERMINES THAT:

1. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

2. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

3. This Court has jurisdiction over the transactions contemplated by the Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this case in this district is proper under 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicates for the relief sought herein are Sections 105(a), 327 and 363 of the United States Bankruptcy Code (the "**Bankruptcy Code**") as supplemented by Bankruptcy Rules 2002 and 6004.

5. As evidenced by the affidavits of service previously filed with this Court, (i) good and sufficient notice, appropriate under the particular circumstances, and reasonably calculated to reach and apprise all holders of Interests (as hereinafter defined) about the relief sought in the Motion has been given and (ii) no other or further notice of the relief sought in the Motion is or shall be required.

6. A reasonable opportunity to object or to be heard with respect to the Motion and the relief requested in the Motion has been afforded to all interested persons and entities.

7. No further bids or offers for the Assets shall be considered or accepted after the date hereof unless the bid set forth in the attached Agreement shall be terminated in accordance with its terms.

8. The terms and conditions set forth in the Agreement (the "**Successful Bid**"), and the transactions contemplated thereby including the conducting of the Liquidation Sale, represent fair and reasonable terms and conditions, including the amount of the purchase price, and constitute the highest or best offer obtainable for the Assets and are fair and adequate. Further, the Auction was duly noticed, and the marketing was conducted in a noncollusive, fair and good faith manner and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Assets. Any objectors or bidders were provided with sufficient opportunity to submit a bid or overbid.

9. As demonstrated by (i) the testimony and other evidence adduced at the Sale Hearing and (ii) the representations of the Debtors and of counsel made on the record at the Sale Hearing, the Debtors have marketed the Assets and have conducted the sale process in accordance with the Court's Order approving the Solicitation, Bid and Auction Procedures portion of the Motion.

10. The Debtors (i) have the requisite power and authority to execute the Agreement and all other documents contemplated thereby, and the sale of the Assets in accordance with the Agreement by the Debtors, and (ii) no consent or approvals, other than those expressly provided for in the Agreement, are required for the Debtors to consummate such transactions.

11. Approval of the Agreement, the decision to accept the Successful Bid and the consummation of the transactions contemplated in the Agreement and the exhibits thereto are appropriate under the circumstances of these cases and are in the best interests of the Debtors, their creditors and other parties in interest.

12. The Agreement and the transactions contemplated thereby were negotiated, proposed and entered into by the Debtors and the Buyers without collusion or fraud, in good faith and from arm's-length bargaining positions. Neither the Debtors nor the Buyers have engaged in any conduct that would prevent the application of Bankruptcy Code Sections 363(m) or implicate or cause the application of Bankruptcy Code Section 363(n) to the Agreement or to the consummation of the transactions contemplated thereby. Any act taken by the Buyers under the Agreement or any decision made by the Buyers pursuant to their duties under the Agreement is in good faith, as that term is used in the Bankruptcy Code and applicable case law, and is entitled to the protections of Bankruptcy Code Sections 363(m) and (n) with respect to all of the transactions contemplated by this Order and the Agreement. Buyers are entitled to all the protections and immunities of Bankruptcy Code Sections 363(m).

13. The transfer of the Assets to the Buyers and the conduct of the Liquidation Sale following entry of the Sale Order will be a legal, valid and effective transfer of the Assets and will vest the Buyers, effective as of the Closing, with all right, title and interest of the Debtors Assets free and clear of any and all interests (including any successor, transferee or similar liability), liens (including but not limited to any and all "liens" as defined in Bankruptcy Code § 101(37)), claims (including but not limited to any and all "claims" as defined in Bankruptcy Code § 101(5)), liabilities, losses, mortgages, deeds, trusts, guarantees, security agreements, security interests, pledges, accounts payable, bank indebtedness, privileges, options, easements,

servitudes, encroachments, hypothecations, charges, obligations, rights, restrictions, charges, encumbrances or other obligations of the Debtors of any nature whatsoever, whether related to the Assets or otherwise and such other liabilities, known or unknown, now existing or hereafter arising, of whatever nature or character, whether absolute or contingent, liquidated or disputed (collectively, "**Interests**").

14. The Debtors have satisfied the standard set forth in Section 363(f) of the Bankruptcy Code for selling the Assets free and clear of all Interests. Indeed, the Buyers would not have entered into the transaction contemplated thereby, thus adversely affecting the Debtors and their creditors, if the sale of the Assets were not free and clear of all Interests, or if the Buyers would, or in the future could, be liable for any Interests.

15. The Agreement constitutes a legal, valid and binding obligation of the Debtors and is enforceable against the Debtors and Buyers in accordance with its terms.

16. The consideration provided by Buyers for the Assets is (i) fair and reasonable and (ii) constitutes reasonable equivalent value and fair consideration for the Assets under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and under the laws of the United States, any state or territory, possession or the District of Columbia.

17. The sale of the Assets to the Buyers is a reasonable and valid exercise of the Debtors' business judgment and is otherwise appropriate under Section 363 of the Bankruptcy Code. The relief requested in the Motion with respect to the Assets, and the transactions contemplated by the Agreement, are in the best interests of the Debtors and their creditors.

18. It is necessary and appropriate for the Court to retain jurisdiction to interpret and enforce the terms of the Sale Order and to adjudicate, if necessary, any and all disputes concerning any provision hereof.

NOW, THEREFORE, THE COURT HEREBY ORDERS, ADJUDGES AND DECREES AS FOLLOWS:

A. The Motion is granted. All objections have been resolved or are otherwise overruled.

B. The Agreement and all of the terms and conditions thereof and exhibits thereto, are hereby approved in all of their particulars.

C. Pursuant to Bankruptcy Code Section 363(b), the Debtors are authorized to perform their obligations and comply with the terms of the Agreement, and are authorized to consummate the sale of the Assets and the Liquidation Sale, pursuant to and in accordance with the terms and conditions of this Order and the Agreement.

D. The Debtors and Liquid Asset Partners, LLC ("**LAP**") are authorized, pursuant to Bankruptcy Code Sections 105 and 363, to conduct the Liquidation Sale pursuant to the terms of the Agreement and his Order, make any and all payments required by the Agreement as and when due thereunder without further order of this Court, and to sell the Liquidation Assets free and clear of any and all mortgages, security interests, conditional sales or title retention agreements, pledges, hypothecations, liens, judgments, encumbrances or claims of any kind or nature (including any and all "claims" as defined in section 101(5) of the Bankruptcy Code), including, without limitation, the liens and security interests of any secured creditor, whether arising by agreement, any statute or otherwise and whether arising before, on or after the Petition Date (collectively, the "Liens"), with such Liens, if any, to attach to solely to the Purchase Price

with the same validity, force and effect as the same had with respect to the assets at issue, subject to any and all defenses, claims or counterclaims or setoffs that may exist.

E. The Debtors shall be responsible for the payment of all Expenses incurred or accruing through October 31, 2010 pursuant to the Agreement, provided, that if LAP desires to conduct the Liquidation Sale in November 2010, LAP shall be responsible to pay the Debtors the actual amount of occupancy costs and utilities at the Seller Locations up to $35,000 with the Debtors paying any such excess amounts.

F. LAP shall be entitled to retain all proceeds from the Liquidation Sale of the Assets.

G. The transactions including the Liquidation Sale to be conducted pursuant to the Agreement and this Order shall be binding upon and all entities including, without limitation, all landlords of the Seller Locations, filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold pursuant to this Order; and each and every federal, state, and local governmental agency or department is directed to accept this Order as sole and sufficient evidence of the transfer of title to any particular purchaser, and such agency or department shall rely upon this Order in consummating the transactions contemplated by the Agreement and this Order.

H. Each and every federal, state or local agency, department or governmental authority with regulatory authority over the Sale and all newspapers and other advertising media in which

the Sale is advertised shall consider this Order binding and may allow the Debtors and LAP to conduct the Liquidation Sale provided for in the Agreement without charging advertising rates in excess of the rates charged to the Debtors prior to the Petition Date, including, without limitation, the conducting and the advertising of the Sale in the manner contemplated by the Agreement, and no further approval, license or permits of any governmental authority shall be required; provided, however that the Debtors and LAP continue to be bound by and comply with the state and local public health and safety laws ("Safety Laws"), and tax, labor, employment, environmental and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, the "General Laws"), to the extent applicable.

I. If any parties or persons, including, but not limited to, landlords, subtenants, utility companies, governmental agencies (except to the extent provided otherwise in this Order), sheriffs, marshals or other public officers, creditors and all those acting for or on their behalf, believe that cause exists to: (a) prohibit the Debtors and LAP from advertising the Liquidation Sale in a manner that is consistent with the Agreement; (b) in any way interfere with or otherwise impede the conduct of the Liquidation Sale at the Seller Locations or the use or maintenance of all services, furniture, fixtures, equipment and other assets located at the Seller Locations; or (c) institute any action or proceeding in any court or other administrative body, other than this Court, having as its objective the obtaining of an order or judgment against the Debtors, LAP or a landlord that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Sale at the Locations or seek to recover damages for breach(es) of covenants or provisions in any lease or sublease based upon any relief authorized herein, this Court shall retain exclusive jurisdiction to resolve such dispute, and such parties or persons shall take no action against the Debtors, LAP or the landlords of the Locations until this

Court has resolved such dispute. This Court shall hear the request of such persons or parties with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

J. Provided that the Liquidation Sale is conducted in accordance with the terms of this Order and the Agreement, the Debtors and LAP shall be deemed to be in compliance with the requirements of any applicable "going-out-of-business," or similar themed inventory liquidation sales, or bulk sale laws (each a "**GOB Law**" and together, the "**GOB Laws**").

K. The Liquidation Sale shall be conducted by Debtors and LAP without the necessity of compliance with any federal, state or local statute or ordinance (other than Safety Laws), lease provision or licensing requirement affecting store closing, going out of business, bankruptcy liquidation, or affecting advertising, including signs, sign walkers, banners, and posting of signage.

L. The Liquidation Sale at the Seller Locations shall be conducted by the Debtors and LAP notwithstanding any restrictive provision of any lease, sublease or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Sale, the rejection of leases, abandonment of assets or "going dark" provisions.

M. The provisions of this Order shall be self-executing notwithstanding any restrictions on LAP's ability to conduct the Liquidation Sale in compliance with applicable laws or leases of the Seller Locations. Unless otherwise ordered by the Court, all landlords are directed to accept this Order as binding authority so as to authorize the Debtors and LAP to consummate the Agreement and to conduct the Sale at the Seller Locations, including conducting and advertising the Sale in accordance with the Agreement and this Order.

N. All utilities, landlords, creditors and all persons acting for or on their behalf (but not including Governmental Units (as defined in Bankruptcy Code Section 101(27))) shall not

interfere with or otherwise impede the conduct of the Sale, institute any action against the Debtors, LAP or landlords in any court (other than in the Bankruptcy Court) or before any administrative body which in any way directly or indirectly interferes with or obstructs or otherwise impedes the conduct of the Sale. This Court shall retain exclusive jurisdiction to resolve such disputes, and such parties or persons shall take no action against the Debtors, LAP, the landlords or the Liquidation Sale until this Court has resolved such disputes. This Court shall hear the request of such persons or parties with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

O. Notwithstanding any provision in any of the leases of the Seller Locations to the contrary, LAP and the Debtors are hereafter permitted to conduct the Liquidation Sale in accordance with the Agreement and this Order, and to take all actions reasonably related thereto or arising in connection therewith, including advertising such sales as "going-out-of-business" or similar themed sale in media advertisements, and on interior and exterior banners, sign walkers and other signage that the Debtors and LAP deems appropriate, without complying with any such restrictive lease provision.

P. The Debtors' lessors are hereafter enjoined from in any way interfering with or otherwise restricting the Debtors and LAP from conducting the Liquidation Sale and from seeking to recover damages for breach of any such restrictive provisions.

Q. The Debtors and LAP are authorized and empowered to transfer the Liquidation Assets among the Seller Locations, notwithstanding anything in applicable non-bankruptcy law to the contrary.

R. Before any sale, or transfer of company records, computers (including software) or cash registers and any other point of sale equipment (collectively, "**POS Equipment and Records**"), which may contain personally identifiable information, LAP shall remove or cause to be removed the personally identifiable information from the POS Equipment and Records. All costs to remove the the personally identifiable information from the POS Equipment and Records shall be included as part of the Expenses.

S. Any of the Assets remaining in the Seller Locations on the Sale Termination Date may be abandoned in place by LAP, and the affected landlord may dispose of such property without liability to LAP or any third party or the Debtors and their estates.

T. The Debtors are hereby authorized and directed to execute and deliver and empowered to perform under, consummate and implement the Agreement, together with all additional instruments and documents that the Debtors or the Buyers deem necessary or appropriate to implement the Agreement and effectuate the transactions contemplated by the Agreement, and to take all further actions necessary, proper or advisable for the purpose of assigning, transferring, granting, conveying and conferring to the Buyers or reducing to possession the Assets or for conducting the Liquidation Sale, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Agreement.

U. This Order and the Agreement shall be binding in all respects upon all creditors of the Debtors (known or unknown), agents, any holders of Interests and shall not be subject to rejection. Nothing contained in any order entered in these cases hereafter shall conflict with or derogate from the provisions of the Agreement or this Order.

V. Pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, the Assets shall be transferred to the Buyers and, upon the applicable Closing, shall be free and clear of all Interests, and all such Interests shall attach to the Purchase Price in the order of their priority, with the same validity, force and effect which they now have as against the Assets as of the Petition Date, subject to any claims and defenses a seller may possess with respect thereto.

W. Except as expressly permitted or otherwise specifically provided by the Agreement or this Order, all persons and entities including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, holding Interests of any kind or nature whatsoever against or in the Debtors or the Assets, arising under or out of, in connection with, or in any way relating to, the Debtors, the Assets, any other actions prior to the Closing, or the Sale, are forever barred, estopped and permanently enjoined from asserting against the Buyers, their successors or assigns, its property, or the Assets, such persons' or entities' Interests.

X. Except as otherwise specifically provided herein and in the Agreement, the Buyers shall not be liable for any Claims against the Debtors or the Assets, and the Buyers shall have no successor or vicarious liabilities of any kind or character including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, alter ego, *de facto* merger, substantial continuity or product line, whether known or unknown as of the Closing, now existing or hereafter arising, whether absolute or contingent, liquidated or disputed, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing including, but not limited to, liabilities on account of any of the Excluded Liabilities, to the extent permitted by law. The Buyers have given substantial consideration under the Agreement for the benefit of

holders of Interests. The consideration given by the Buyers shall constitute valid and valuable consideration for the releases of any potential Claims of successor liability against the Buyers.

Y. The transactions set forth herein are exempt from any bulk sales or similar laws, each of which is expressly overridden.

Z. The transfer of the Assets to the Buyers pursuant to the Agreement constitutes a legal, valid and effective transfer of the Assets and shall vest the Buyers with all rights, title and interest of the Debtors in and to the Assets free and clear of all Interests.

AA. If any person or entity that has filed financing statements, mortgages, mechanics' liens, construction liens, lis pendens, or other documents or agreements evidencing Interests in the Debtors or the Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, and/or releases of all Interests which the person asserts, the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Debtors or the Assets and the Buyers are hereby authorized to file, register, or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the release of all Interests in the Debtors or the Assets of any kind or nature whatsoever. The foregoing provision notwithstanding, the provisions of this Sale Order authorizing the sale and assignment free and clear shall be self-executing and notwithstanding the failure of the Debtors, the Buyers or any other party to execute, file or obtain release, termination statements, assignments or other instruments to effectuate, consummate, and/or implement the provisions hereof or the Agreement with respect to the sale and assignment of the Assets, all claims and liens against and Interests in the Assets shall be deemed released.

BB. On the Closing of the Sale, each of the Debtors' respective creditors and any other holder of an Interest is authorized and directed, if necessary, to execute such documents and take all other actions as may be necessary to release its Interests in the Assets, if any, as such Interests may have been recorded or may otherwise exist.

CC. Upon Closing, the Debtors are authorized and directed to execute such documents and take all other actions as may be necessary to transfer the Assets to the Buyers in accordance with the terms of the Agreement and this Order.

DD. This Order shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets.

EE. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

FF. All entities who are in possession of any of the Assets on the Closing Date are hereby directed to surrender possession of the Assets to the Buyer at the Closing.

GG. This Court retains jurisdiction to enforce and implement the terms and provisions of this Order, the Agreement and related matters, including, without limitation, to (i) resolve any disputes arising under or related to the Agreement, (ii) interpret, implement, and enforce the

provisions of this Order, and (iii) protect the Buyers against (a) any of the Excluded Liabilities or (b) the assertion of any Interests against the Assets, of any kind or nature whatsoever.

HH. The transactions contemplated by the Agreement are undertaken by the Buyer without collusion and in good faith, as that term is used in Section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization is duly stayed pending such appeal. The Buyers are good faith purchasers of the Assets, and the Buyers are entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code and the transactions contemplated in the agreement shall not be subject to avoidance or attack under Section 363(n) of the Bankruptcy Code.

II. The terms and provisions of the Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors and all creditors (including upon conversion to Chapter 7 under the Bankruptcy Code), the Buyers and their respective successors, and assigns, and all persons asserting an Interest in the Assets.

JJ. On the Closing Date, the Debtors shall pay in full all Obligations (as defined in the Interim Financing Order Authorizing Borrowing with Priority Over Administrative Expense and Secured by Liens on Property of the Estate Pursuant to Section 364(c) of the Bankruptcy Code entered by the Court) owed to Capital Business Credit, LLC ("CBC") without further order of the Court   Payment of CBC's reasonable costs, including but not limited to attorneys' fees, shall be noticed as required by the Final Financing Order entered on June 18, 2010 [Docket No. 96].

KK. The failure specifically to include any particular provisions of the Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

LL. The Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates only after notice to the Committee.

MM. The Agreement satisfies Local Rule 6004-1(b) in all respects.

NN. The provisions of this Order are non-severable and mutually dependent and, pursuant to Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for 14 days and shall be effective immediately upon entry.

OO. On July 3, 2010, Henry County, Virginia ("**Henry County**") filed its Notice of Secured Lien of Henry County, Virginia and Response to Debtors' Notice of Motion for Sale of Substantially All of Its Assets (the "**Henry County Objection**"), in which Henry County (a) asserted that it held a secured claim against the Debtors in an amount greater than $26,000 for unpaid business personal property taxes owed by the Debtors to Henry County (the "**Personal Property Claim**"); (b) asserted that it held a secured claim against the Debtors by virtue of a sheriff's levy against the property to secure a grant in the amount of $280,000 from the Tobacco Indemnification and Community Revitalization Commission (the "**Community Revitalization Claim**") and (c) objected to the sale of the Debtors' personal property to the extent that Henry County's Personal Property Claim and Community Revitalization Claims were not paid in full from the Purchase Price. Henry County has agreed to withdraw the Henry County Objection in

return for the payment of $17,000 from the Purchase Price in full and final settlement of any and all business personal property taxes owed by the Debtors to Henry County including, but not limited to, the Personal Property Claim from the Purchase Price. Nothing contained in this Order shall be construed as a limitation in any way, or an adjudication of, the Community Revitalization Claim. Accordingly, on the Closing Date, the Debtors shall pay $17,000 (the "**Henry County Transfer**") to Henry County from the Purchase Price. Upon receipt of the Henry County Transfer, Henry County shall be deemed to have waived and released the Debtors and their estates from any and all present or future claims, demands, obligations, liabilities, and causes of action of any kind or character whatsoever that in any way relate to an obligation of the Debtors to pay any past or future business personal property taxes to Henry County.

  PP. Nothing in the Agreement or this Order shall constitute or be deemed a release of any prepetition claims (as this term is defined in section 101(5) of the Bankruptcy Code) arising from or related to acts, conduct or the lack thereof or prepetition causes of action arising from or related to acts, conduct or the lack thereof by the Sellers and/or their bankruptcy estates against any third party including but not limited to Hancock Park Capital III, LP, Hancock Management Partners, Inc. and the Debtors' officers, directors and employees, provided, however, nothing herein shall have any affect on the provisions of this Order, including, but not limited to, any findings or conclusions relating to sections 363(m) or 363(n) of the Bankruptcy Code or the transaction contemplated by the Agreement.

  QQ. As set forth in section 1.2(b) of the Agreement, the Debtors agree that $125,000 of the Purchase Price shall be held by the Debtors in a separate segregated account to timely pay Expenses through the earlier of the Sale Termination Date or October 31, 2010 provided that any unused portion of this amount shall be transferred from such segregated account to the Debtors' general account.

RR. Immediately following the Closing, the Unsecured Lenders shall waive the Unsecured Lender Claims against the Sellers, and shall, as soon as practicable, cause a notice of withdrawal of the Unsecured Lender Claims to be filed with the claims agent. Unsecured Lenders shall not sell or otherwise transfer ownership or control of the Unsecured Lender Claims.

Dated: August 19, 2010

_____
U.S. Bankruptcy Judge